# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

|  |  |  |
|---|---|---|
| Francis J. Farina, on behalf of himself and all others similarly situated,<br>Plaintiff, | : : : : | |
| vs. | : : | Civil Case No.: _____ |
| Mazda Motor of America, Inc.,<br> and<br>Keffer Mazda, on behalf of itself and all others similarly situated,<br>Defendants. | : : : : : : | TRIAL BY JURY DEMANDED ON ALL COUNTS |

## CLASS ACTION COMPLAINT

***Nature of Suit***

1.      Plaintiff brings this lawsuit on behalf of himself and a proposed class of past and present owners and lessees (the "Class") of defective 2021 Mazda CX-30, CX-5, CX-9, Mazda3, and Mazda6 vehicles (the "Class Vehicles") designed, manufactured, marketed, distributed, sold, warranted, and serviced by Defendant Mazda Motor of America, Inc. ("Defendant" or "Mazda").

2.      These vehicles, and the persons who bought them, are easily ascertainable through Defendant's records as pursuant to Technical Service Bulletin ("TSB") 01—12/21, as follows:

2021 Mazda3 (Japan built 2.5T) with VINS lower than JM1BP******403639 (produced before September 14, 2021)

2021 Mazda6 (2.5T) with VINS lower than JM1GL******618910 (produced before September 15, 2021)

2021 CX-30 (2.5T)

2021 CX-5 (2.5T) with VINS lower than JM3KF******472325 (produced before September 14, 2021)

1

2021 CX-9 (2.5T) with VINS lower than JM3TC******541071 (produced before September 14, 2021)

3.      Plaintiff and the Class are damaged because the Class Vehicles contain defective valve stem seals that allow engine oil to leak into the Class Vehicles' combustion chamber (the "Valve Stem Seal Defect" or "Defect"), which causes the Class Vehicles to consume an excessive amount of engine oil in between regular oil change intervals; places the Class Vehicles at an increased risk of engine failure; violates federal emissions standards; and causes damage to the Class Vehicles' engines and emissions components including, but not limited to, the vehicles' catalytic convertors.

4.      Plaintiff also seeks certification of a Defendant Class of Dealerships because they are actively conspiring with Mazda to hide and conceal a known, dangerous defect.

5.      Specifically, the Defendant Class of Dealerships uniformly – and at the behest of Mazda - conceal the true danger, by using the exact language contained in Mazda Motor's Technical Service Bulletin(s) ("TSB"):

> *Explain the following to the customer:*
>
> *A small amount of the engine oil may be leaking into the combustion chamber, causing the oil consumption. Mazda has confirmed this oil leakage into the combustion chamber will not cause any immediate engine damage and the vehicle may be safely driven. The warning message and CHECK ENGINE light will go off by topping off the engine oil level. This is only a temporary repair and as soon as Mazda identifies the root cause, a complete repair procedure will be announced. Mazda will top off or replace the engine oil at no charge until the complete repair is provided.*

TSB 01-012/21 (emphasis added.)

6.      The Valve Stem Seal Defect poses an extreme safety hazard to the environment, drivers, passengers, pedestrians, and the vehicles themselves in the form of prohibited, non-disclosed carbon emissions because it prevents the Class Vehicles' engines from maintaining the

proper level of engine oil and causes voluminous oil consumption that cannot be reasonably anticipated or predicted, and which can result in engine failure as well as damage to the vehicles' emissions components including, but not limited to, catalytic converters.

7.    As a result, the Defect can cause engine failure while the Class Vehicles are in operation, exposing the Class Vehicle drivers, their passengers, and others who share the road with them to serious risk of accidents and injury – as is borne out by several complaints to the National Highway Traffic Safety Administration ("NHTSA").

8.    Mazda – and the Defendant Dealer Class - have long known about the Defect; however, they have refused or otherwise been unable to repair the Defect in the Class Vehicles under Mazda's warranties in violation of the federal Magnuson-Moss Warranty Act.

9.    Plaintiff seeks global recall and/or repairs and/or replacement for the affected engines and emissions systems, reimbursement for the increased oil use, and for Mazda to honor its warranties.

***Jurisdiction and Venue***

10.    This Court has jurisdiction over this matter pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1)(B), in that the Plaintiff claims more than $50,000.00 in damages, exclusive of interest and costs.

11.    Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events giving rise to the Plaintiff's claims occurred within this District; this District is where Plaintiff purchased the vehicle and has it serviced; Defendant directs and controls warranty repairs on covered vehicles; and this District is where Defendant made repeated misrepresentations to Plaintiff and concealed certain material information from Plaintiff.

*Parties*

12.     Plaintiff, Francis J. Farina is a resident of North Carolina at 203 Hobbs Street, Davidson, North Carolina 28036.

13.     Keffer Mazda ("Keffer" or "KM") is an authorized Mazda Sales and Service Facility located at 13307 Statesville Rd., Huntersville, NC 28078.

14.     Keffer operates pursuant to terms set by Mazda within their Service and Sales Agreement ("SSA.")

15.     Pursuant to the SSA, KM – and each and every Mazda dealer similarly situated - is required to conceal this Defect at the time of sale and then to spin it as outlined above, withholding the truth as to the severity of the Defect - and the consequences which emanate from it, when, as herein, a purchaser returns to the Dealership with low oil prior to a scheduled maintenance interval.

16.     Defendant Mazda Motor of America, Inc. ("Mazda" or "Defendant") is a California corporation with a principal place of business at 200 Spectrum Center Drive, Irvine, Orange County, California 92618.

17.     At all times herein mentioned, Mazda designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, repaired, retrofitted or failed to retrofit, failed to recall, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and/or sold the Class Vehicles, including the vehicle operated by Plaintiff.

18.     Mazda also reviews and analyzes warranty data submitted by Mazda's dealerships and authorized technicians in order to identify defect trends in vehicles.

19.     Pursuant to the SSA, Mazda dictates to the Dealership Class that when a repair is made under warranty (or warranty coverage is requested), its service centers must provide

Defendant with detailed documentation of the problem and the fix that describes the complaint, cause, and correction ("CCC"), and also save the broken part in the event Defendant decides to audit the dealership.

20.     Mazda uses this information to determine whether particular repairs are covered by an applicable Mazda warranty or are indicative of a pervasive defect, and both it and the Dealer Class, are required by uniform federal law nearly universally adopted by the several states, to maintain these records for not less than five (5) years.

*Mazda's Engines are Palpably Defective*

21.     Based upon the data generated by its dealers, on November 10, 2020, Mazda acknowledged internally that some of the Class Vehicles consume an excessive amount of engine oil, a symptom of the Valve Stem Seal Defect.

22.     Specifically, on that date, Mazda updated its "High Engine Oil Consumption" "M-Tips" Bulletin to its dealerships, M-Tips No.: MT-005/20, to include, inter alia, 2021 CX-5, 2021 CX-9, and 2021 Mazda6 vehicles, and noted that "Some customers may complain about high engine oil consumption."

23.     The above M-Tip Bulletin provides a process for Mazda dealerships to measure a vehicle's engine oil consumption. Specifically, it directs Mazda dealers to measure a vehicle's engine oil consumption after driving 1,200 miles and states that "[n]o repair is necessary" where a vehicle consumes less than one liter (1.06 quarts) of engine oil within 1,200 miles.

24.     However, Mazda's Owner's Manual and Warranty advise that the recommended oil service interval for Class Vehicles is the earlier of 10,000 miles or one year.

5

25.     Thus, according to Mazda, a vehicle needs to consume more than eight quarts of engine oil between recommended oil change intervals in order to necessitate a repair for excess oil consumption.

26.     There is nothing normal or expected about this rate of oil consumption and this sort of carbon burn exceeds that which Mazda certified to the Environmental Protection Agency ("EPA"), violates the Clean Air Act,[1] and will quickly lead to the breakdown of the vehicle's emissions components – the catalytic convertor especially, as well as the engine itself and its components.

27.     On October 4, 2021, Mazda issued Technical Service Bulletin No. 01-012/21, applicable to 2021 Mazda CX-30, CX-5, CX-9, Mazda3 and Mazda6 vehicles that were "produced before September 14, 2021." The bulletin notes that "Some vehicles may have a 'LOW ENGINE OIL LEVEL' warning message and a CHECK ENGINE light illuminated in the instrument cluster, along with DTC P250F:00 stored in memory.  Upon inspecting the engine oil level, the level is found to be low and there doesn't appear to be any trace of oil leakage in the engine compartment. This concern usually occurs when the mileage reaches approximately 3,100 – 4,700 miles (5,000 - 7,500km) and may also occur again after replacing or topping off the engine oil."

28.     The October 4, 2021 bulletin further states that "[t]he root cause of this concern has not been identified yet, therefore a repair procedure will be announced at a later date." However, at the same time, the bulletin acknowledges that "[s]ince this issue has been reported after a valve stem seal modification, it is very likely that valve stem seal damage is causing oil to leak into the combustion chamber." (emphasis supplied).

---

[1] Plaintiff intends  to amend this complaint to bring a claim under the Clean Air Act in accordance with 42 U.S. Code § 7604.

6

29.    Regarding a repair procedure, the bulletin directs dealers that they should first "verify that the oil level is low" and if so, "verify that there is no oil leakage in the engine compartment." "If no oil leakage is found," the bulletin advises that dealer should "top off the engine oil to the FULL level as a temporary measure."

30.    The bulletin also directs dealers to minimize the severity of the Valve Stem Seal Defect to Class Vehicle owners by telling dealers to "[e]xplain the following to the customer: A small amount of the engine oil may be leaking into the combustion chamber, causing the oil consumption. Mazda has confirmed this oil leakage into the combustion chamber will not cause any immediate engine damage and the vehicle may be safely driven. The warning message and CHECK ENGINE light will go off by topping off the engine oil level. This is only a temporary repair and as soon as Mazda identifies the root cause, a complete repair procedure will be announced. Mazda will top off or replace the engine oil at no charge until the complete repair is provided."

31.    Notably, Mazda does not claim that engine oil leaking into the combustion chamber will not cause long term engine damage, but only that it purportedly "will not cause any immediate damage."

32.    On November 24, 2021, Mazda issued a revised version of Bulletin No. 01-012/21.

33.    The revised bulletin was largely identical to the prior one; however, it directs Mazda dealers that if the dealer inspects a vehicle and determines there is no oil leakage, the dealer should either "top off the engine oil to the FULL level as a temporary measure or replace the engine oil if service is due within 1000 miles or 30 days." The bulletin continues to state that "[t]he root cause of this concern has not been identified yet, therefore a repair procedure will be announced at a later date."

7

34. To date, however, Mazda has not provided its dealers with an adequate repair procedure regarding the Valve Stem Seal Defect.

35. Oil collecting on the stems of intake valves is sucked into the combustion chamber during normal operation.

36. Hot exhaust gases burn oil on stems of the exhaust valves.

37. If, as is apparent herein, there's too much clearance between the valve stems and guides, the engine will suck more oil down the guides and into the cylinders.

38. Mazda's problems could be caused by premature valve guide wear or seals that are improperly installed.

39. The engine may still have good compression but, as herein, will burn a lot of oil.

***The Consequences of Mazda's Defect on the Environment & Vehicle***

40. By itself, oil consumption is a well-known source of harmful emissions to the atmosphere. Solid contaminants combined with soot and other oil suspensions influence engine wear, deposits and oil economy (oil consumption rate).

41. When oil is consumed, it enters the combustion chamber, burns with the fuel and is pushed out with exhaust gases as particles and volatile hydrocarbons.

42. Fresh new lubricants have more volatile light-end molecules and are more prone to hydrocarbon emissions.

43. Unburned or partially burned oil is released through the exhaust path in the form of hydrocarbons and particulate contamination (soot).

44. Additionally, motor oil anti-wear additives are known to poison or at least impair the performance of catalytic converters.

45.     The more oil consumed through the combustion chamber, the greater this poisoning risk/effect.

46.     This escalates the environmental impact further.

47.     Nitrogen oxides (NOx) consist of nitric oxide (NO) and nitrogen dioxide (NO2). These ozone precursors also lead to smog when exposed to hydrocarbon gases and sunlight.

48.     As a health hazard, NOx can potentially cause irritation and damage to lung tissue as well as paralysis.

49.     Because of regulatory requirements and environmental protection pressures to lower both particulates and NO2, increased pressure has been placed on lubricant formulation, engine design and filter performance.

50.     Mazda, in obtaining proper certifications to sell these vehicles in the United States, did not disclose its vehicles would use seven (7) to eight (8) times the amount of oil nor have they come clean since.

51.     Additionally, with the increased carbon accumulating on spark plugs, gas mileage will begin to decline at precipitous rates depending on driving habits. Mazda has not corrected its estimates with the EPA in this regard either.

**_Mazda Knew its Engine was Defective Prior to Certification and Sale_**

52.     Mazda became aware of the Valve Stem Seal Defect through sources not available to Plaintiff and Class Members, including, but not limited to, pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to Mazda's network of dealers and directly to Mazda, aggregate warranty data compiled from Mazda's network of dealers, testing conducted by

Mazda in response to consumer complaints, and repair order and parts data received by Mazda from Mazda's network of dealers.

53.     During the pre-release process of designing, manufacturing, engineering, and performing durability testing on the Class Vehicles, which would have likely occurred between 2019 and early 2020, before Mazda began selling the Class Vehicles, Mazda necessarily would have gained comprehensive and exclusive knowledge about the Class Vehicles' engines and specifically the valve stem seals: the types and properties of materials used to make them, including their durability and whether those materials would weaken over time regardless of wear and use; the basic engineering principles behind their construction; and the cumulative and specific impacts on the valve stem seals and related engine components caused by wear and use, the passage of time, and environmental factors.

54.     Moreover, pre-release analysis of the design, engineering, and manufacture of the Class Vehicles would have revealed to Mazda that the valve stem seals were defective and allow engine oil to escape into the Class Vehicles' engines' combustion chambers.

55.     Thus, during the pre-release analysis stage of the Class Vehicles, Mazda would have known that the Class Vehicles were defective and would pose a safety risk to the environment, owners/lessees, and the motoring public.

56.     Despite that testing on the Class Vehicles revealed the Valve Stem Seal Defect to Mazda, Mazda failed to remedy the manufacturing processes with the Class Vehicles before putting the vehicles into production and selling them to the public.

57.     Mazda also knew about the Valve Stem Seal Defect once these vehicles were sold in the North American Market because numerous consumer complaints regarding excess engine oil consumption were made directly to Mazda.

58. The large number of complaints, and the consistency of their descriptions of the symptoms of the Defect, alerted Mazda to this serious Valve Stem Seal Defect affecting the Class Vehicles.

### *Plaintiff Farina's Experience*

59. On April 26, 2021, Mr. Farina purchased a new 2021 Mazda6, VIN No. JM1GL1TY8M1605719, from Keffer Mazda, financing $30,000 over sixty (60) months.

60. Being a Certified Public Accountant ("CPA") as well as an attorney, Mr. Farina has kept meticulous notes of his oil consumption and changes:

**SUMMARY OF FARINA 2021 MAZDA OIL CHANGES/ADDITIONS**
**ACQUISITION OF VEHICLE THROUGH 1/7/2023**

| Date | Description | Keffer Invoice Odometer Reading[3] | Interval Miles Driven | Contemporaneous Mileage Log Entry[2] Date | Odometer |
|---|---|---|---|---|---|
| 4/26/21 | Car delivered | 357 | | 4/26/21 | 357 |
| 9/21/21 | Oil change | 2,687 | 2,330 | 9/12/21 | 2,676 |
| | | | | 9/26/21 | 2,938 |
| 11/23/21 | Oil change | 7,554 | 4,867 | 11/20/21 | 7,263 |
| | | | | 11/24/21 | 7,661 |
| 3/21/22 | Oil change | 12,509 | 4,955 | 3/19/21 | 12,201 |
| | | | | 3/27/21 | 12,540 |
| 6/12/22 | Oil change | 74,889[4] | 4,900[5] | 5/31/22 | 17,409 |
| | | | | 7/19/22 | 17,737 |
| 11/10/22 | Oil added | | 4,170 | 11/10/22 | 21,579 |
| 11/21/22 | Oil change | 25,000 | 5,429 | 11/22/22 | 22,838 |
| 1/6/23 | Oil added | | 2,001 | 1/6/23 | 24,839 |

61. When challenged by Farina about this excessive use, KM simply repeated the TSM language outlined above.

---

[2] Contemporaneous Mileage Log entry from log maintained in vehicle glovebox.
[3] Per Keffer Mazda Service invoice.
[4] Clearly erroneous entry by Keffer Mazda – see Contemporaneous Mileage Log entries.
[5] Amount calculated as difference between Contemporaneous Mileage Log Entry and odometer reading on Keffer invoice at date of service.

11

*Plaintiff and Defendant Class Allegations*

**Plaintiff Class**

62.     Plaintiff brings this action on his own behalf, and on behalf all persons or entities in the United States who are current or former owners and/or lessees whose vehicles are subject to Technical Service Bulletin ("TSB") 01—12/21.

63.     They are

2021 Mazda3 (Japan built 2.5T) with VINS lower than JM1BP******403639 (produced before September 14, 2021)

2021 Mazda6 (2.5T) with VINS lower than JM1GL******618910 (produced before September 15, 2021)

2021 CX-30 (2.5T)

2021 CX-5 (2.5T) with VINS lower than JM3KF******472325 (produced before September 14, 2021)

2021 CX-9 (2.5T) with VINS lower than JM3TC******541071 (produced before September 14, 2021)

*Id.*

64.     The Class is so numerous that joinder of all members is impracticable. Although the size of the Class (and any separate classes or sub-classes that may be appropriate under Fed. R. Civ. P. 23(c)(5)) is presently unknown to Plaintiff, this information is easily obtainable from Defendants, who have it in their exclusive possession.

65.     Based on preliminary discovery – reported sales - it is estimated that the Class consists of more than a hundred thousand consumers nationally.

66.     There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members including:

a.   whether the Class Vehicles suffer from the Valve Stem Seal Defect;

b.   whether the Valve Stem Seal Defect constitutes an unreasonable safety hazard;

c.   whether Defendant knows about the Valve Stem Seal Defect and, if so, how long Defendant has known of the Defect;

d.   whether the defective nature of the Class Vehicles' valve stem seals constitutes a material defect;

e.   whether Plaintiff and the other Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

f.   whether Defendant knew or reasonably should have known of the Valve Stem Seal Defect contained in the Class Vehicles before it sold or leased them to Class Members;

g.   whether Defendant breached its express warranty and the and the Magnuson-Moss. Warranty Act, as alleged in this Complaint;

h.   whether Defendant has breached its implied warranty and the Magnuson-Moss. Warranty Act, as alleged in this Complaint;

i.   whether Defendant has misled the EPA;

j.   whether Defendant continues to mislead the EPA;

k.   whether Defendant has violated the Clean Air Act;

l.   whether Defendant continues to violate the Clean Air Act; and

m.  the appropriate class-wide measure of damages for the Classes

67.     Plaintiff's claims are typical of the claims of the Class, which all arise from the same operative facts and are based on the same legal theories.

68.     Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is committed to vigorously litigating this matter. Further, Plaintiff has retained counsel who are highly experienced in handling class actions, particularly consumer class actions.

69.     Neither Plaintiff nor his counsel have any interests which conflict with or are antagonistic to those of the Class or which might cause them to not vigorously pursue this action.

70.     This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing any Class, as well as a risk of adjudication with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impede or impair their ability to protect their interests.

71.     A class action is a superior method for the fair and efficient adjudication of this controversy. The interests of Class members in individually controlling the prosecution of separate claims against Defendants is small given the small amount of the actual damages at issue for each Class member, but which in the aggregate are estimated to involve millions of dollars. Management of the action as a class action is likely to present significantly fewer difficulties than those presented by any assertion of many individual claims.

72.     The identities of Class members can easily be obtained from Defendants' computerized and electronic records.

73.     Defendant has acted, and refused to act, on grounds generally applicable to the Classes, thereby making appropriate final equitable relief with respect to the Classes as a whole.

**The Defendant Class**

74.     KM – and all of Mazda's 544 dealerships across the USA - knowingly conspired with the manufacturing Defendant to conceal the subject defect.

75.     And, pursuant to the SSA and TSB, supra, they continue to do so.

76.     Therefore, Plaintiff also seeks certification of a defendant class action under Rule 23(a) of the Federal Rules of Civil Procedure for each of the 544 dealerships selling and servicing new Mazdas (collectively, the "Defendant Class.")

77.     The Defendant Class is so numerous that joinder of all members is impracticable.

78.     A specific identification of each of the 544 dealers who participated in the subject scheme is within the Defendant Manufacturer's sole custody and control, and available with keystrokes.

79.     There are questions of law and fact common to the Defendant Class that predominate over any questions affecting only individual Defendant Class members including, but not limited to:

     a.  was relevant, material information about the defect withheld at the time of sale;

     b.  is relevant, material information about the defect continuing to be withheld when an owner presents with a vehicle subject of the TSB; and

     c.  the appropriate class-wide measure of damages

80.     Defendant KM is typical of the other dealers in the Defendant Class, in that its actions all arise from the same operative facts and Plaintiff's claims are based on the same legal theories as the claims asserted on behalf of class members against the relevant Dealer.

81.     A class action is a superior method for the fair and efficient adjudication of this controversy. Management of the action as a class action is likely to present significantly fewer difficulties than those presented by any assertion of many individual claims or defenses.

82.     The identities of Defendant Class members can easily be obtained from Defendants' computerized and electronic records.

83.     Defendants and their employees or agents are excluded from the Plaintiff class.

## COUNT 1[6]
## Civil Conspiracy

84.     All prior paragraphs and averments contained therein are incorporated herein as though set forth in complete detail below.

85.     Plaintiff incorporates and re-alleges the preceding paragraphs as though the same were fully set forth at length herein.

86.     Keffer and all other  members of the Dealership Class operate pursuant to terms set by Mazda within its Service and Sales Agreement ("SSA.")

87.     Plaintiff and the Class are damaged because the Class Vehicles contain defective valve stem seals that allow engine oil to leak into the Class Vehicles' combustion chamber (the "Valve Stem Seal Defect" or "Defect"), which causes the Class Vehicles to consume an excessive amount of engine oil in between regular oil change intervals; places the Class Vehicles at an increased risk of engine failure; violates federal emissions standards; and causes damage to the Class Vehicles' engines and emissions components including, but not limited to, the vehicles' catalytic convertors.

88.     Pursuant to the SSA, Mazda dictates to the Dealership Class that when a repair is made under warranty (or warranty coverage is requested), its service centers must provide Defendant with detailed documentation of the problem and the fix that describes the complaint, cause, and correction ("CCC"), and also save the broken part in the event Defendant decides to audit the dealership.

---

[6] Please note, while Plaintiff brings claims herein pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, et seq., he intends to promptly amend to include such claims herein in accordance with the Clean Air Act.

16

89.     The Defendant Class of Dealerships uniformly – and at the behest of Mazda - conceal the true danger, by using the exact language contained in Mazda Motor's Technical Service Bulletin(s) ("TSB"):

> *Explain the following to the customer:*
>
> *A small amount of the engine oil may be leaking into the combustion chamber, causing the oil consumption. Mazda has confirmed this oil leakage into the combustion chamber will not cause any immediate engine damage and the vehicle may be safely driven. The warning message and CHECK ENGINE light will go off by topping off the engine oil level. This is only a temporary repair and as soon as Mazda identifies the root cause, a complete repair procedure will be announced. Mazda will top off or replace the engine oil at no charge until the complete repair is provided.*

TSB 01-012/21 (emphasis added.)

90.     Pursuant to the SSA, KM – and each and every Mazda dealer similarly situated - is required to conceal this Defect at the time of sale and then to spin it as outlined above, withholding the truth as to the severity of the Defect - and the consequences which emanate from it, when, as herein, a purchaser returns to the Dealership with low oil prior to a scheduled maintenance interval.

91.     Defendants are bound at the hip to act in concert pursuant to the SSA.

92.     Defendants, jointly and systematically, through common and uniform practice, have actively misled the consumer prior to sale and thereafter.

93.     Defendants have combined or agreed with intent to do an unlawful act, or to do an otherwise lawful act by unlawful means in the manner described above.

94.     KM – and all of Mazda's 544 dealerships across the USA who are members of the Defendant Class - knowingly conspired with the manufacturing Defendant to conceal the subject defect and, pursuant to the SSA and TSB, *supra*, they continue to do so.

95.     As a direct and proximate result of Defendants' joint and concerted action, combination and conspiracy as alleged herein, Plaintiff and the Class have suffered damages, and Defendants are jointly and severally liable for those damages.

**COUNT 2**
**Breach of Implied and Express Warranties Pursuant to the Magnuson-Moss Warranty Act**
**(15 U.S.C. §2301, et seq.)**

96.     All prior paragraphs and averments contained therein are incorporated herein as though set forth in complete detail below.

97.     Under Mazda's New-Vehicle Limited Warranty,

"[t]he New-Vehicle Limited Warranty period for defects in materials and workmanship in all parts supplied by Mazda is 36 months or 36,000 miles, whichever comes first" and "The Powertrain Limited Warranty period for defects in materials and workmanship in the powertrain components supplied by Mazda is 60 months or 60,000 miles, whichever comes first."

See https://www.mazdausa.com/owners/warranty" https://www.mazdausa.com/owners/warranty

(last visited January 25, 2023).

98.     Plaintiff and members of the Classes are each a "consumer" as defined in 15 U.S.C. § 2301(3).

99.     Defendant Mazda is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

100.    Defendant KM – and the other 544 similarly situated dealerships - are Defendant Mazda's sales and service agents, operating pursuant to the terms and conditions set within Mazda's SSA.

101.    The Class Vehicles are each a "consumer product" as defined in 15 U.S.C. § 2301(6).

102.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with the written and implied warranties.

103.     15 U.S.C. § 2304(a)(1) requires Defendant, as a warrantor, to remedy any defect, malfunction or nonconformance of the Class Vehicles within a reasonable time and without charge to the Plaintiff and Class members.

104.     Defendants' sale of the defective Class Vehicles and its failure and/or refusal to repair the Class Vehicles' Valve Stem Seal Defect within the applicable warranty period constitute a breach of the written and implied warranties applicable to the Class Vehicles.

105.     Defendants have failed to remedy the Class Vehicles' defects within a reasonable time, and/or a reasonable number of attempts, thereby breaching the written and implied warranties applicable to the Class Vehicles.

106.     As a result of Defendants' breaches of the written and implied warranties, and Defendants' failure to remedy the same within a reasonable time, Plaintiff and class members have suffered damaged.

## COUNT 3
### *Declaratory Relief/Judgment*

107.     All prior paragraphs and averments contained therein are incorporated herein as though set forth in complete detail below.

108.     Plaintiffs hereby demand – pursuant to 28 U.S.C. §§ 2201 and 2201 as implement by Rule 57 of the Federal Rules of Civil Procedure, Declaratory Judgment that Defendants actions and conduct violate federal statutes.

## COUNT 4
### *Jury Demand*

109.     All prior paragraphs and averments contained therein are incorporated herein as though set forth in complete detail below.

110.     Plaintiff hereby demands a jury trial as to all issues herein.

# DEMAND FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Defendants as follows:

a.      An order certifying the proposed plaintiff and Defendant Dealer Classes, designating Plaintiff as named representative of the Plaintiff Class, and designating the undersigned as Class Counsel;

b.      An order awarding Plaintiff and class members their actual damages, incidental and consequential damages, punitive damages, and/or other form of monetary relief provided by law;

c.      An order awarding Plaintiff and the class members restitution, disgorgement, or other equitable relief as the Court deems proper;

d.      Equitable relief including, but not limited to, replacement of the Class Vehicles with new vehicles, or repair of the defective Class Vehicles with an extension of the express warranties and service contracts which are or were applicable to the Class Vehicles;

e.      A declaration requiring Defendant to comply with the various provisions of the federal statutes herein alleged and to make all the required disclosures to the EPA;

f.       Reasonable attorneys' fees and costs;

g.      Pre-judgment and post-judgment interest, as provided by law;

h.      Plaintiff demands that Defendant perform a recall or repair or repurchase of all Class Vehicles; and

i.      Such other and further relief as this Court deems just and proper.


Dated: January 28, 2023                       Respectfully Submitted,

                                              The DiGuiseppe Law Firm, P.C.
                                              By: s/ Raymond M. DiGuiseppe
                                              NC State Bar No. 41807
                                              4320 Southport-Supply Road, Suite 300
                                              Southport, NC 28461
                                              (910) 713-8804
                                              law.rmd@gmail.com

                                              M<sup>c</sup>Leod │ Brunger PLLC
                                              By:/s/Joseph A. O'Keefe
                                              Joseph A. O'Keefe, Co. #52229, Pa. # 77068
                                              *Pro-Hac Vice Application Forthcoming*
                                              10375 Park Meadows Drive, Suite 260
                                              Lone Tree, CO 80124
                                              (720) 443-6600

20

jokeefe@mcleodbrunger.com
*Attorneys for Plaintiff*