IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| FRANCIS J. FARINA,<br><br>                Plaintiff,<br><br>vs.<br><br>MAZDA MOTOR OF AMERICA, INC.<br>and KEFFER MAZDA,<br><br>                Defendants. | Civil Action No. 3:23-cv-00050 |

**Reply in Support of Joint Motion to Dismiss, Stay, or Transfer on behalf of Defendants Mazda Motor of America, Inc. d/b/a Mazda North American Operations & Lake Norman Auto Mall, LLC d/b/a Keffer Mazda**

## Introduction

Plaintiff's opposition concedes more than it opposes. In moving to stay, dismiss, or transfer under the first-to-file rule (Dkt. 20), Defendants showed that (1) the *Guthrie* action was first filed; (2) as analyzed in the context of class actions, the parties in each case are substantially similar; and (3) the issues at stake are substantially similar, particularly as the same factual basis gives rise to the claims in each. (Dkt. 21 ("Defs.' Br.") at 8–13.) Plaintiff's opposition ignores key aspects of Defendants' motion, opting instead to paint a picture of law and fact that is both manufactured and immaterial. In doing so, Plaintiff concedes the following key conclusions from Defendants' motion, concessions that serve to concede the applicability of the first-to-file rule: first, the *Guthrie* action was first-filed; second, the putative nationwide classes in the *Guthrie* and *Farina* actions substantially overlap; third, the factual issues in each are substantially similar because they derive from the same alleged defect and Defendants' knowledge of and response thereto. (Defs.' Br. at 8–13.)

1

Perhaps recognizing the shortcomings of his position, Plaintiff tries to engage somewhat with Defendants' substantive arguments grounded in the application of the first-to-file's analytical framework. In doing so, however, Plaintiff misconstrues and misstates Defendants' motion, the law, and the facts. Plaintiff (1) asserts with little legal or factual support that the parties and issues are not similar *enough* (i.e., as plaintiff would have it, identical); (2) represents an internally inconsistent theory of his own case, thereby demonstrating that no equities favor dispensing with the first-to-file rule; (3) suggests (without support) misstatements or concealments by Defendants.

In short, Plaintiff's opposition fails to rebut the applicability of the first-to-file rule to his case. For the reasons stated in their opening brief, Defendants fully meet their burden in seeking the relief requested in their motion, which the Court should grant.

**Argument**

**I. Plaintiff has not rebutted the applicability of the first-to-file rule.**

As established in Defendants' brief, under the first-to-file rule, a court may dismiss, stay, or transfer an action when a similar lawsuit has been filed and is pending in a federal forum. *E.g.*, *Troche v. Bimbo Foods Bakeries Dist., Inc.*, No. 3:11-cv-234, 2011 WL 3565054, at *3 (W.D.N.C. Aug. 12, 2011). Assuming the later-filed action is in fact later filed—which Plaintiff does not and cannot dispute—the rule applies where the parties and issues are sufficiently similar. *E.g.*, *U.S. Airways, Inc. v. U.S. Airline Pilots Assoc.*, No. 3:11-cv-371, 2011 WL 3627698, at *2–3 (W.D.N.C. Aug. 17, 2011) (setting forth and applying the analytical framework). Plaintiff's opposition—when it actually engages with the issues—can be boiled down to an argument that the parties and issues are not similar enough. (Dkt. 22 (Pl.'s Br.) at I.A.i, iii, vi, viii.) Each of these arguments are dispensed in turn.

**A. The parties in *Farina* and *Guthrie* are substantially and sufficiently similar: the putative plaintiffs' classes overlap and both parties name MNAO as defendant.**

Parties are sufficiently similar under the first-to-file rule where there is "substantial similarity." *E.g.*, *Blackwell v. Midland Credit Mgmt., Inc.*, No 2:18-cv-2205, 2018 WL 4963166, at *3 (D.S.C. Oct. 15, 2018). Here, Defendants have established that—notwithstanding the presence of an additional defendant—the parties substantially overlap based on the putative plaintiffs' classes and the mutuality of MNAO as a defendant.

Plaintiff makes three assertions in opposition. None has merit.

*The first-to-file rule requires merely substantial similarity between parties, not identicality.* Plaintiff first appears to vaguely argue that the first-to-file rule in fact requires exact identicality between the parties. (*See* Pl.'s Br. at 2–3.) This is incorrect. As shown by the cases Defendants cited—and Plaintiff ignored—the addition or omission of defendants does not defeat application of the rule, since "the same exact identity of the parties is not required for the first to file rule, and instead the parties must be substantially similar." *E.g.*, *Blackwell*, 2018 WL 4963166, at *3. Indeed, multiple courts have applied the first to file rule even where different actions include or omit additional defendants." *Id.*; *also Moore's Electr. & Mech. Constr., Inc. v. SIS LLC*, No. 6:15-cv-00021, 2015 WL 6159473, at *4 (W.D. Va. Oct. 20, 2015) ("While it may be true that the parties and the issues in this case are not identical, courts have long held that neither the parties involved nor the issues at stake need be completely identical for the first-to-file rule to apply.") (*citing Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).

Plaintiff appears to trace this identicality requirement to *Nutrition & Fitness, Inc. v. Blue Stuff, Inc.*, 264 F. Supp. 2d 357, 360 (W.D.N.C. 2003) ("Where the same parties have filed similar litigation in separate federal . . ."), and cites *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622,

3

625 (9th Cir. 1991) as "other appellate case law that shows 'similarity of parties' may be an incorrect phrasing of the test which actually requires the same parties for application." (Pl.'s Br. at 2–3.) *See Alltrade, Inc.*, 946 F.2d at 625 ("[The first-to-file rule] may be invoked when a complaint involving the same parties and issues has already been filed in another district." (internal quotation marks omitted)). But Plaintiff's reliance on either is misplaced.

Neither *Nutrition & Fitness* nor *Alltrade* actually involved any analysis as to the similarity of the parties. *Nutrition & Fitness, Inc.*, 264 F. Supp. 2d at 360 (determining the parties did not dispute the applicability of the first-to-file rule and instead analyzing whether an equitable exception applied); *Alltrade, Inc.*, 946 F.2d at 625 (determining that the identity of parties was "clearly met" and analyzing only the similarity of the issues). Moreover, the *Alltrade* court ultimately affirmed the district court's first-to-file dismissal, despite the presence of additional defendants in the earlier action. *Alltrade, Inc.*, 946 F.2d at 624 & n.3.

More importantly, the Ninth Circuit has subsequently squarely addressed the issue, stating that "the first-to-file rule requires only substantial similarity of parties[,]" and recognized that "[a] contrary holding could allow a party such as [the plaintiff] to skirt the first-to-file rule merely by omitting one party from a second lawsuit." *Kohn Law Gr., Inc. v. Auto Part Mfg. MS, Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015). The court firmly stated that "[o]ur conclusion avoids awarding such gamesmanship and is consistent with the policy of the first-to-file rule, which is to maximize judicial economy, consistency, and comity." *Id.* Thus, Plaintiff's party-identicality argument fails.

*Plaintiff's putative defendant class of dealers does not negate the substantial similarity of the parties.* Plaintiff next asserts that it "is also of significant consequence" that the *Farina* action seeks to certify a defendant class not asserted in the *Guthrie* action, that the defendant class claims "are a critical component of the conspiracy pleaded by Mr. Farina," and that the "defendant class

4

makes the scope of Mr. Farina's litigation far broader in scope." (Pl.'s Br. at 11–12.) These are all three conclusory statements without any factual or legal support. As Defendants explained, Plaintiff's claims against each defendant—whether individually or on behalf of a putative class—are factually intertwined: the factual basis that Plaintiff alleges would give rise to MNAO's liability would, according to Plaintiff, also give rise to Defendant Keffer Mazda's (and the putative class). (Defs.' Br. at 12–13.)

This is exactly the kind of case where additional defendants should not prevent application of the rule—the defendants have "similar interests," *Blackwell*, 2018 WL 4963166, at *3, and Keffer Mazda's liability as an additional defendant is "closely connected to the facts" of the first-filed suit. *Moore's Electr. & Mech. Constr., Inc.*, 2015 WL 6159473 at *4. Plaintiff himself has alleged that each defendant's liability emanates from the same alleged defect in the same putative class vehicles and the same alleged concealment thereof. Plaintiff offers no facts suggesting anything to the contrary. Moreover, Plaintiff offers no facts suggesting he would be prejudiced, or otherwise deprived of any relief, should these claims be adjudicated in another forum.

Moreover, declining to apply the rule on the basis of Plaintiff's putative defendant class of dealerships would reward "gamesmanship" at the expense of the "policy of the first-to-file rule, which is to maximize judicial economy, consistency, and comity." *Kohn Law Gr., Inc.*, 787 F.3d at 1240. Plaintiff's quixotic unicorn hunt in the form of defendant class allegations is no different than any other second-filed action that adds or drops a party for a patina of uniqueness. *See Bell v. Brocket*, 922 F.3d 502, 504 & n.1 (4th Cir. 2019) (stating that "[d]efendant class actions are so rare they have been compared to 'unicorns'," and explaining that "the inherent risks of such proceedings are likely the reason for their rareness" (quoting *CIGNA HealthCare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 853 (7th Cir. 2002))). Courts have rightly rejected tactics of creative

5

pleading, and the Court should do so here, particularly where Plaintiff seeks to separately adjudicate his putative defendant class allegations while substantially *duplicating* litigation of his putative plaintiffs' class allegations. Rather than negating the applicability of the first-to-file rule, Plaintiff's defendant class allegations amplify it.

*The plaintiffs in each action are substantially similar because the putative classes substantially overlap.* Finally, Plaintiff argues that there is a "unique plaintiff" and "unique class" with a "North Carolina Plaintiff." (Pl.'s Brief at 3.) Plaintiff relies on *Dyer v. Air Methods Corp.*, No. 9:20-cv-2309, 2020 WL 7398711 (D.S.C. Dec. 17, 2020), to assert that litigation is not duplicative under the first-to-file rule where "the actions [were] brought by discrete plaintiffs on behalf of discrete classes." *Dyer*, 2020 WL 7398711, at *3. Plaintiff's reliance on this principle is misplaced, however, and belies his own nationwide class allegations. In *Dyer*, the plaintiff in the second-filed action sought to represent a class of South Carolina consumers, while the plaintiffs in the earlier-filed cases represented consumers in other states. *Id.* The classes were thus "discrete," indeed, mutually exclusive. Not so here.

The plaintiff in *Guthrie* seeks to represent a nationwide class of past and present purchasers and lessees of 2021 and 2022 Mazda CX-30, 2021 CX-5, 2021 CX-9, 2021 and 2022 Mazda3, and 2021 Mazda6 models. (*Guthrie* Dkt. 39 ¶ 1 (attached as Ex. 8 to Defs.' Brief).) Likewise, the *Farina* Plaintiff also seeks to represent a nationwide class of past and present purchasers and lessees of 2021 Mazda 3, 2021 Mazda6, 2021 CX-30, 2021 CX-5, and 2021 CX-9 models. (Dkt. 1 ¶ 1.) And, as further discussed *infra*, the injuries allegedly suffered by these putative classes stems from the same underlying facts (i.e., the same alleged defect, its effects, and MNAO's alleged knowledge of and response thereto). This is substantial overlap in putative classes; indeed, the putative class in *Guthrie* is broader than the putative class in the instant action. Moreover, the

6

many arguments in Plaintiff's opposition to the "federal" interests at play undercut his purported state interests. (*E.g.*, Pl.'s Br. at 6, 7.) And to the extent Plaintiff seeks to distinguish his case based on a difference in named plaintiffs, in a class action, "the classes, and not the class representatives, are compared." *Blackwell*, 2018 WL 4963166, at *3.

**B. The issues in *Farina* and *Guthrie* substantially overlap: both seek adjudication regarding liability as to the same alleged defect in the same putative class vehicles.**

Defendants similarly established in their motion that the *Farina* and *Guthrie* matters involve adjudication of the same underlying facts, making them substantially similar for purposes of the first-to-file rule. Plaintiff does nothing in his opposition to dispute this; indeed, he appears to concede the substantial overlap of factual issues by stating, "Mr. Farina is bringing a Federal case asserting Federal rights that is very different from the state law theories alleged in *Guthrie* and *where the only overlap is the engine itself*." (Pl.'s Br. at 5–6.) Plaintiff concedes, as Defendants asserted, that both cases—regardless of the theories of relief—involve questions of fact involving the same putative class vehicles, the same alleged valve stem defect, MNAO's alleged knowledge about and concealment of the alleged defect, and MNAO's alleged failure to provide an adequate repair. (Defs.' Br. at 13.)

Consider the following overlap in allegations from the operative complaints in each action. According to the plaintiffs in each action:

- The putative class vehicles "contain defective valve stem seals that allow engine oil to leak into the Class Vehicles' combustion chamber. . ., which causes the Class Vehicles to consume an excessive amount of engine oil in between regular oil change intervals[]" which "places the Class Vehicles at an increased risk of engine failure" and "causes damage to the Class Vehicles' engines[.]" (Dkt. 1 ¶ 3; *Guthrie* Dkt. 39 ¶ 2; *see also* Dkt. 24-2 ¶ 2 (Pl.'s Proposed First Amended Complaint).)

- On November 10, 2020, "Mazda acknowledged" "that some of the Class Vehicles consume an excessive amount of engine oil, a symptom of the Valve Stem Seal Defect. Specifically, on that date, Mazda updated its 'High Engine

7

- Oil Consumption' 'M-Tips Bulletin' to its dealerships, M-Tips No.: MT-005/20, to include, inter alia, 2021 CX-5, 2021 CX-9, and 2021 Mazda6 vehicles, and noted that 'Some customers may complain about high engine oil consumption.'" (Dkt. 1 ¶¶ 21–22; *see Guthrie* Dkt. 39 at ¶ 112; *see also* Dkt. 24-2 ¶¶ 47–48.)

- "The above M-Tips Bulletin provides a process for Mazda dealerships to measure a vehicle's engine oil consumption. Specifically, it directs Mazda dealers to measure a vehicle's engine oil consumption after driving 1,200 miles and states that '[n]o repair is necessary' where a vehicle consumes less than one liter (1.06 quarts) of engine oil within 1,200 miles. However, Mazda's Owner's Manual and Warranty advise that the recommended oil service interval for Class Vehicles is the earlier of 10,000 miles or one year. Thus, according to Mazda, a vehicle needs to consume more than eight quarts of engine oil between recommended oil change intervals in order to necessitate a repair for excess oil consumption." (Dkt. 1 ¶¶ 23–25; *see Guthrie* Dkt. 39 at ¶ 115–16; *see also* Dkt. 24-2 ¶¶ 49–51.)

- "There is nothing normal or expected about this rate of oil consumption . . . ." (Dkt. 1 ¶¶ 23–26; *Guthrie* Dkt. 39 at ¶ 115–16; *see also* Dkt. 24-2 ¶ 52.)

- A bulletin dated October 4, 2021 "directs dealers to minimize the severity of the Valve Stem Seal Defect to Class Vehicles owners…. Notably, Mazda does not claim that engine oil leaking into the combustion chamber will not cause long term engine damage, but only that it purportedly 'will not cause any immediate damage.'" ((Dkt. 1 ¶¶ 30–31; *Guthrie* Dkt. 39 at ¶ 123; *see also* Dkt. 24-2 ¶¶ 56–57.)

Plaintiff further describes the same technical documents as those described in the *Guthrie* complaint, using substantially overlapping language, (*compare e.g.*, Dkt. 1 ¶¶ 27–33 *with Guthrie* Dkt. 39 118–119, 122–24; *see also* Dkt. 24-2 ¶¶ 53–59), and further makes almost identical allegations of MNAO's knowledge of the alleged defect. (*Compare e.g.*, Dkt. 1 at 52–53 *with Guthrie* Dkt. 39 at 143–40; *see also* Dkt. 24-2 ¶¶ 78–79.)

These are the "central issues" in each action. *Troche*, 2011 WL 3565054, at *3. Yet, Plaintiff would have two different courts and juries address and resolve many of the exact same—verbatim, even—alleged class "common issues":

- "whether the Class Vehicles suffer from the Valve Stem Seal Defect";
- "whether the Defendant knows about the Valve Stem Seal Defect and, if so, how long Defendant has known of the Defect";

8

- "whether the defective nature of the Class Vehicles' valve stem seals constitutes a material defect";
- "whether Plaintiff and the other Class Members are entitled to equitable relief, including, but limited to, a preliminary and/or permanent injunction"; and
- "whether Defendant knew of reasonably should have known of the Valve Stem Seal Defect contained in the Class Vehicles before it sold or leased them to Class Members."

(Dkt. 1 ¶ 66; *Guthrie* Dkt. 39 ¶ 162; *see also* Dkt. 24-2 ¶ 97.)

Attempting to side-step this, Plaintiff focuses on his purported distinguished state and federal claims. (*See* Pl.'s Br. at 6, 7.) This analysis is non-responsive.

First, Plaintiff's entire state-versus-federal dichotomy is a false one, as it simply does not matter for purposes of the first-to-file rule. Once again, the presence of additional or different claims does not require setting aside the rule; instead, the inquiry focuses on whether the two actions involve the "same factual issues."[1] *Troche*, 2011 WL 3565054, at * 3; *Family Dollar Stores v. Overseas Direct Import Co., Ltd.*, No. 2:10-cv-278, 2011 WL 148264, at *2 (W.D.N.C. Jan. 18, 2011).

Second, to the extent Plaintiff relies on his proposed First Amended Complaint to avoid application of the rule, his claims therein do not move the ball. (*See* Pl.'s Br. at 7–9.) As Defendants argued in their motion, Plaintiff's promised Clean Air Act ("CAA") claims do not prevent the application of the first-filed rule. Plaintiff's factual allegations in his proposed First Amended Complaint remain virtually untouched, except to add new allegations related to emissions warranties. They still center around the same putative class vehicles, the same alleged defect, the

---

[1] Plaintiff also ignores that he has plead a state law claim for civil conspiracy and this his own breach of express or implied warranties—regardless of whether it is based on a federally-mandated emissions warranty as plead in his proposed First Amended Complaint—will rest on a predicate state law cause of action, since a Magnuson-Moss Warranty Act claim merely provides a federal remedy for an underlying state-law cause of action.

same technical documents concerning the alleged defect, and MNAO's knowledge of and response to the alleged defect. The allegations of emissions violations and MNAO's alleged failure to properly respond thereto—whether they support a claim for breach of warranty or under the CAA—stem entirely from the same alleged defect in the *Guthrie* complaint. Plaintiff merely asserts additional causes of action. In short, nothing in Plaintiff's proposed First Amended Complaint changes the conclusion that allowing these two cases to proceed separately is precisely the sort of judicial waste the first-to-file rule was designed to mitigate. *See Troche*, 2011 WL 3565054, at *3.

Finally, Plaintiff's argument that his CAA claims could not be litigated in the *Guthrie* court is incoherent, at best. (*See* Pl.'s Br. at 9–11.) Plaintiff appears to suggest that all state claims are preempted where *he* deems them to be "related to" vehicle emissions, a plainly untenable analytical framework. (*Id.* at 10.) Further, Plaintiff appears to suggest that a plaintiff from California has no standing to enforce the CAA. (*Id.* at 11.) It is unnecessary to wade into Plaintiff's circumlocutionary legal analysis, however, because it rests on erroneous factual assumptions: Gary Guthrie is from Washington, not California, and he is just *one* of the named plaintiffs in the *Guthrie* action (five of whom are also from states other than California), both facts Plaintiff flatly fails to square with his preemption analysis. (*Guthrie* Dkt. 39 ¶¶ 13–19.) More broadly, his entire argument fails, because (1) the first-to-file rule is applicable even where additional or different claims are present, and (2) were the first-to-file rule applied to transfer this action to the *Guthrie* court for consolidation, Plaintiff Farina would be a plaintiff there.

In sum, Plaintiff has failed to rebut the application of the first-to-file rule.

## II. Plaintiff's assertions that North Carolina is the best forum for litigating his claims is belied by his complaint's allegations and the repeated assertions throughout his opposition that his claims are purely federal and national in scope.

In their motion, Defendants established that the "balance of convenience" favors application of the first-to-file rule, pointing to both the strong factual nexus between Plaintiff's claims and the Central District of California, and the relatively weak nexus between Plaintiff's claims and the instant forum. (Defs.' Br. at 14–18.) Plaintiff responds by asserting that "Mr. Farina is a North Carolina citizen who bought his new Mazda from a dealership in North Carolina for an injury he alleges occurred in North Carolina and is ongoing against North Carolina's environment." (Pl.'s Br. at 12.) But as Defendants pointed out, Plaintiff purports to bring this case as a class representative on behalf of a putative *nationwide* class against a putative *nationwide* class of defendants and a California corporation. Any nexus between Mr. Farina's individual interests and the instant forum are eclipsed by the scope of his own class allegations, both on behalf of the putative plaintiffs' class and the putative defendants' class. Plaintiff's arguments fail to rebut this. Indeed, Plaintiff's opposition spends numerous paragraphs disputing the state law interests involved in his case, which are, in his own view, "purely federal."

And it is further puzzling that Plaintiff would oppose consolidation under the first-to-file rule while also suggesting the same under a multidistrict litigation ("MDL") structure, the application of which would be analyzed under similar convenience factors. To be clear, no party has sought an MDL, and Defendants maintain that an MDL is unnecessary given the ready availability of resort to the first-to-file rule. But Plaintiff appears to suggest an MDL to preserve remand of his litigation to this forum, even though remand would be pointless where, as according to Plaintiff, the only local interests in this case relate to Mr. Farina himself. And indeed, remand

11

would be particularly gratuitous, given—as discussed and outlined *supra*—the numerous identical common questions that plaintiffs in both cases ask to be resolved on a class-wide basis. Plaintiff would have two different courts duplicate adjudication of these issues, resulting in precisely the sort of inefficiency and waste Defendants' motion seeks to mitigate. More broadly, nothing about this case requires consideration of MDL consolidation. There are three cases that involve substantially overlapping parties and facts. Consolidation—if not stay or dismissal—can be accomplished via the first-filed rule.

In short, Plaintiff has failed to rebut that the balance of convenience favors of application of the first-to-file rule, or that any other equitable exception should prevent it. Rather, the balance of convenience does not favor allowing Plaintiff's substantially similar claims to proceed separately.

### III. Plaintiff's various other assertions and accusations lack merit.

Plaintiff's final arguments—found throughout his brief—are various accusations that Defendants are supposedly attempting to conceal facts that, once disclosed, reveal that the first-to-file rule is inapplicable. None hold water. They only serve to concede the applicability of the first-to-file rule to Plaintiff's case.

#### A. There are no supposed "concealed admissions."

Plaintiff argues the Court should not apply the first-to-file rule because "Defendants failed to inform this Court that on January 20, 2023, pursuant to Rule 11[2] of the Federal Rules of Civil Procedure ('FRCP'), they represented to the California Court—contrary to what is alleged in the subject Joint Motion—that Mazda argued that Plaintiffs in California lack standing to bring a class

---

[2] Plaintiff's vague reference to "Rule 11" here is entirely unclear. To the extent he intends to refer to Fed. R. Civ. P. 11, he fails to explain—much less support—any such invocation, and it is entirely improper.

action complaint for purchasers located in states where there is no class representative . . . ." (Pl.'s Br. at 4.) Plaintiff cites to MNAO's reply brief in support of its motion to dismiss the second amended complaint in *Guthrie*, in which MNAO argued that those plaintiffs lack standing to bring claims on behalf of a nationwide class. (*Id.*; *see* Pl.'s Ex. G.) MNAO made this exact argument in its primary motion to dismiss, which it attached to Defendant's brief. (*Guthrie* Dkt. 46 at 23 (attached as Ex. 3 to Defs.' Br.).) This is neither an admission, nor are Defendants concealing it. MNAO is properly defending against the *Guthrie* class action by asserting available defenses.[3] More importantly, however, the *Guthrie* court has not ruled on MNAO's motion.

More broadly, Plaintiff's argument is nothing more than an attempt to side-step that the relevant analysis for determining whether the first-to-file rule should apply is to look at the *putative* classes. And as already established, Plaintiff's putative class here substantially overlaps with that in *Guthrie*. *E.g.*, *Blackwell*, 2018 WL 4963166, at *3 (analyzing the proposed classes in assessing application of the first-to-file rule). Indeed, Plaintiff's argument only highlights that the first-to-file rule is particularly applicable here—i.e., "in a pre-class certification context, as it avoids multiple attempts at certification in two different courts." *Id.* (quoting *Cox c. Air Methods Corp.*, no. cv 1:17-04610, 2018 WL 2437056, at *4 (S.D.W. Va. May 20, 2018) (internal quotation marks

### B. Defendants have not misrepresented the status of *Guthrie*.

Apparently in an attempt to convince this Court that the *Guthrie* action is not so advanced as to warrant application of the first-to-file rule, Plaintiff asserts that Defendants have misrepresented, concealed, and "baldly misstated" the status of that action, including by allegedly concealing that there has been no actual discovery exchanged and that there is a stay on discovery

---

[3] Moreover, nor is MNAO conceding that the *Farina* plaintiffs are entitled to a nationwide class.

in place. Once again, Plaintiff's accusations are unsupported, and his arguments concede more than they oppose.

First, nowhere in Defendants' brief do they assert that the *Guthrie* litigation has seen discovery. (*Compare* Pl.'s Br. at 1 ("defendants have baldly misstated the status of the Guthrie action. There has been no discovery. . . . .") *with* Defs.' Br. at 11.) In their motion, Defendants represented (and provided docket entries substantiating) that the *Guthrie* action was not only first-filed, but is also significantly further along in litigation, particularly when compared to the instant matter. As Defendants explained in both their factual recitation and analysis, the *Guthrie* litigation was removed to the Central District of California on May 25, 2022. (Defs.' Br. at 4.) Following that removal, the case saw two amendments to the complaint and two motions to dismiss (the latter of which was fully briefed and is currently pending). (Defs.' Br. at 11) Further, the *Guthrie* court issued a scheduling order on February 1, 2023, which set dates for discovery and trial; the court also *ordered* the parties to mediation[4], which is scheduled for May 1, 2023. (*Id.* (*citing Guthrie* Dkts. 57–58 (attached as Exs. 9–10 to Defs.' Brief).) The *Guthrie* litigation has proceeded exactly as far as Defendants represented and substantiated to the Court.

Nevertheless, Plaintiff next asserts that Defendants have "conceal[ed]" the true status of the *Guthrie* litigation by omitting from mention that the *Guthrie* case "has an order in place STAYING Discovery as Plaintiff's were not entitled to—in Judge Carter's words—a 'fishing expedition.'" Plaintiff fails to mention that the "order" referenced was from a hearing on October 17, 2022, during which, Judge Carter stated:

> Discovery is stayed *until the filing of the second-amended complaint*. And then we will take up discovery on the scheduling conference for the second-amended

---

[4] Plaintiff's multiple assertions throughout his opposition that the parties are "racing to" mediation is pure postulation that does not merit response except to point out that the mediation is in fact court-ordered.

14

> complaint. That's when we should take up that issue, *but I'm not giving a blanket, carte blanche, that there's no discovery*. Right now, this discovery is held in abeyance, pending a second amended complaint, and I would prepare to Mazda also so usually the scope of what they're asking, rather than a fishing expedition.

(Pl.'s Ex. D at 9.) As stated in Defendants' motion, the second amended complaint was filed on October 31, 2022—*14 days later*. There is no stay on discovery in place in *Guthrie*. Plaintiff is thus mistaken both in his understanding of the status in *Guthrie* as well as his attack on Defendants.

### C. Plaintiff's own determination that one of the *Guthrie* plaintiffs lacks standing is irrelevant.

Finally, Plaintiff asserts that the court should not transfer this case based on the Plaintiff's assertion that the *Guthrie* plaintiff "arguably" lacks injury-in-fact. (Pl.'s Br. at 7–8.) Plaintiff bases this analysis on the same October 17, 2022 hearing transcript, in which the *Guthrie* plaintiffs' counsel indicated that Mr. Guthrie's vehicle had undergone a repair on the vehicle. Plaintiff's argument ignores the *Guthrie* Second Amended Complaint, which continues to assert that the repair was supposedly inadequate. Moreover, the Second Amended Complaint named additional plaintiffs, a fact Plaintiff Farina here once again fails to square with his analysis.

### Conclusion

Plaintiff has failed to rebut the applicability of the first-to-file rule. The Court should dismiss, stay, or, in the alternative, transfer this litigation for consolidation with the first-filed *Guthrie* action.

[SIGNATURE PAGE TO FOLLOW]

Respectfully submitted this 14th day of April, 2023.

/s/Evan M. Sauda_____
Evan M. Sauda, N.C. Bar No. 32915
NELSON MULLINS RILEY & SCARBOROUGH LLP
301 S. College Street, 23rd Floor
Charlotte, North Carolina 28202
T: (704) 417-3000
F: (704) 377-4814
Email: Evan.Sauda@nelsonmullins.com

Robert L. Wise, Admitted *Pro Hac Vice*
Danielle Gibbons, Admitted *Pro Hac Vice*
NELSON MULLINS RILEY & SCARBOROUGH LLP
901 East Byrd Street, Suite 1650
Richmond, Virginia 23219
T: 804.533.2900
F: 804.616.4129
Email: Robert.Wise@nelsonmullins.com
Email: Danielle.Gibbons@nelsonmullins.com

*Counsel for Mazda Motor of America, Inc. d/b/a Mazda North American Operations & Lake Norman Auto Mall, LLC d/b/a Keffer Mazda*

/s/Jeremy A. Kosin_____
Jeremy A. Kosin, N.C. Bar No. 36116
Kenneth B. Rotenstreich, N.C. Bar No. 14293
TEAGUE ROTENSTREICH STANALAND FOX & HOLT PLLC
Post Office Box 1898
Greensboro, North Carolina 27402-1898
T: (336) 272-4810
F: (336) 272-2448
Email: jak@trslaw.com
Email: kbr@trslaw.com

*Counsel for Lake Norman Auto Mall, LLC d/b/a Keffer Mazda*

16