# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

|  |  |
|---|---|
| FRANCIS J. FARINA, | |
| Plaintiff, | Civil Action No.  3:23-cv-00050 |
| vs. | |
| MAZDA MOTOR OF AMERICA, INC. and KEFFER MAZDA, | |
| Defendants. | |

**Reply in Support of Joint Motion to Dismiss, Stay, or Transfer on behalf of Defendants Mazda Motor of America, Inc. d/b/a Mazda North American Operations & Lake Norman Auto Mall, LLC d/b/a Keffer Mazda**

### Introduction

Plaintiff's opposition concedes more than it opposes. In moving to stay, dismiss, or transfer under the first-to-file rule (Dkt. 30), Defendants showed that (1) the *Guthrie* action was first filed; (2) as analyzed in the context of class actions, the parties in each case are substantially similar; and (3) the issues at stake are substantially similar, particularly as the same factual basis gives rise to the claims in each. (Dkt. 31 ("Defs.' Br.") at 11–15.) Plaintiff's opposition ignores key aspects of Defendants' motion, opting instead to paint a picture of law and fact that is both manufactured and immaterial. In doing so, Plaintiff concedes the following key conclusions from Defendants' motion, concessions that serve to concede the applicability of the first-to-file rule: first, the *Guthrie* action was first-filed; second, the putative nationwide classes in the *Guthrie* and *Farina* actions substantially overlap; third, the factual issues in each are substantially similar because they derive from the same alleged defect and Defendants' knowledge of and response thereto. (Defs.' Br. at 11–15.)

Perhaps recognizing the shortcomings of his position, Plaintiff tries to engage somewhat with Defendants' substantive arguments grounded in the application of the first-to-file's analytical framework. In doing so, however, Plaintiff misconstrues and misstates Defendants' motion, the law, and the facts. Plaintiff (1) asserts with little legal or factual support that the parties and issues are not similar *enough* (i.e., as Plaintiff would have it, identical); (2) represents an internally inconsistent theory of his own case, thereby demonstrating that no equities favor dispensing with the first-to-file rule; and (3) suggests (without support) misstatements or concealments by Defendants. Meanwhile, Plaintiff continues to ignore his own misstatements despite Defendants having pointed them out.

In short, Plaintiff's opposition fails to rebut the applicability of the first-to-file rule to his case. For the reasons stated in their opening brief, Defendants fully meet their burden in seeking the relief requested in their motion, which the Court should grant.

## Argument

### I. Plaintiff has not rebutted the applicability of the first-to-file rule.

As established in Defendants' brief, under the first-to-file rule, a court may dismiss, stay, or transfer an action when a similar lawsuit has been filed and is pending in a federal forum. *E.g.*, *Troche v. Bimbo Foods Bakeries Dist., Inc.*, No. 3:11-cv-234, 2011 WL 3565054, at *3 (W.D.N.C. Aug. 12, 2011). Assuming the later-filed action is in fact later filed—which Plaintiff does not and cannot dispute—the rule applies where the parties and issues are sufficiently similar. *E.g.*, *U.S. Airways, Inc. v. U.S. Airline Pilots Assoc.*, No. 3:11-cv-371, 2011 WL 3627698, at *2–3 (W.D.N.C. Aug. 17, 2011) (setting forth and applying the analytical framework). Plaintiff's opposition—when it actually engages with the issues—can be boiled down to an argument that the

2

parties and issues are not similar enough. (*E.g.*, Dkt. 34 (Pl.'s Br.) at 7–8.) Each of these arguments is dispensed in turn.

**A. The parties in *Farina* and *Guthrie* are substantially and sufficiently similar: the putative plaintiffs' classes overlap and both parties name MNAO as a defendant.**

Parties are sufficiently similar under the first-to-file rule where there is "substantial similarity." *E.g.*, *Blackwell v. Midland Credit Mgmt., Inc.*, No 2:18-cv-2205, 2018 WL 4963166, at *3 (D.S.C. Oct. 15, 2018). Here, Defendants have established that—notwithstanding the presence of an additional defendant—the parties substantially overlap based on the putative plaintiffs' classes and the mutuality of MNAO as a defendant. (*See generally* Defs.' Br. at 12–13.)

Plaintiff makes three assertions in opposition. None has merit.

*The first-to-file rule requires merely substantial similarity between parties, not identicality.* Plaintiff first appears to vaguely argue that the first-to-file rule requires exact identicality between the parties. (*See* Pl.'s Br. at 7–8.) This is incorrect. As shown by the cases Defendants cited—and Plaintiff ignored—the addition or omission of defendants does not defeat application of the rule, since "the same exact identity of the parties is not required for the first to file rule, and instead the parties must be substantially similar." *E.g.*, *Blackwell*, 2018 WL 4963166, at *3. "Indeed, multiple courts have applied the first to file rule even where different actions include or omit additional defendants." *Id.*; *also Moore's Electr. & Mech. Constr., Inc. v. SIS LLC*, No. 6:15-cv-00021, 2015 WL 6159473, at *4 (W.D. Va. Oct. 20, 2015) ("While it may be true that the parties and the issues in this case are not identical, courts have long held that neither the parties involved nor the issues at stake need be completely identical for the first-to-file rule to apply.") (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).

3

Plaintiff appears to trace his misplaced identicality requirement to *Nutrition & Fitness, Inc. v. Blue Stuff, Inc.*, 264 F. Supp. 2d 357, 360 (W.D.N.C. 2003) ("Where the same parties have filed similar litigation in separate federal fora . . ."), and cites *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991), as "other appellate case law that shows 'similarity of parties' may be an incorrect phrasing of the test which actually requires the same parties for application." (Pl.'s Br. at 8.) *See Alltrade, Inc.*, 946 F.2d at 625 ("[The first-to-file rule] may be invoked when a complaint involving the same parties and issues has already been filed in another district." (internal quotation marks omitted)). But Plaintiff misplaces reliance on either.

Neither *Nutrition & Fitness* nor *Alltrade* actually involved any analysis as to the similarity of the parties. *Nutrition & Fitness, Inc.*, 264 F. Supp. 2d at 360 (determining the parties did not dispute the applicability of the first-to-file rule and instead analyzing whether an equitable exception applied); *Alltrade, Inc.*, 946 F.2d at 625 (determining that the identity of parties was "clearly met" and analyzing only the similarity of the issues). Moreover, the *Alltrade* court ultimately affirmed the district court's dismissal based on the first-to-file rule, despite the presence of additional defendants in the earlier action. *Alltrade, Inc.*, 946 F.2d at 624 & n.3.

More importantly, the Ninth Circuit—on which Plaintiff relies—has subsequently squarely addressed the issue, stating that "the first-to-file rule requires only substantial similarity of parties," and recognized that a "contrary holding could allow a party such as [the plaintiff] to skirt the first-to-file rule merely by omitting one party from a second lawsuit." *Kohn Law Gr., Inc. v. Auto Part Mfg. MS, Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015). The *Kohn Law* court explained that its "conclusion avoids awarding such gamesmanship and is consistent with the policy of the first-to-file rule, which is to maximize judicial economy, consistency, and comity." *Id.* Thus, Plaintiff's party-identicality argument fails.

4

*Plaintiff's putative defendant class of dealers does not negate the substantial similarity of the parties.* Plaintiff next asserts that it "is also of significant consequence" that the *Farina* action seeks to certify a defendant class not asserted in the *Guthrie* action, that the defendant class claims "are a critical component of the conspiracy pleaded by Mr. Farina," and that the "defendant class makes the scope of Mr. Farina's litigation far broader in scope." (Pl.'s Br. at 16.) These three conclusory statements lack factual or legal support. As Defendants explained in anticipation of such an argument, Plaintiff's claims against each defendant—whether individually or on behalf of a putative class—are factually intertwined: the factual basis that Plaintiff alleges would give rise to MNAO's liability would, according to Plaintiff, also give rise to Defendant Keffer Mazda's (and the putative class's). (Defs.' Br. at 12–13.)

Plaintiff does not address this reality, and instead ignores that this is exactly the kind of case where additional defendants should not prevent application of the rule—the defendants have "similar interests," *Blackwell*, 2018 WL 4963166, at *3, and Keffer Mazda's purported liability as an additional defendant is "closely connected to the facts" of the first-filed suit. *Moore's Electr. & Mech. Constr., Inc.*, 2015 WL 6159473, at *4. Indeed, Plaintiff himself asserts that each defendant's liability emanates from the same alleged defect in the same putative class vehicles and the same alleged concealment thereof. (*See, e.g.*, FAC ¶ 144 (alleging that "Defendants' sale of the defective Class Vehicles and its failure and/or refusal to repair the Class Vehicles Valve Stem Seal Defect within the applicable warranty period constitute a breach of the written and implied warranties applicable to the Class Vehicles").) Plaintiff offers no facts suggesting anything to the contrary, nor any facts suggesting he would be prejudiced, or otherwise deprived of any relief, should his claims be adjudicated in another forum along with other substantially similar claims.

Moreover, declining to apply the rule on the basis of Plaintiff's putative defendant class of dealerships would reward "gamesmanship" at the expense of the "policy of the first-to-file rule, which is to maximize judicial economy, consistency, and comity." *Kohn Law Gr., Inc.*, 787 F.3d at 1240. In their brief, Defendants showed that Plaintiff's putative defendant class is unworkable and presented merely to attempt a patina of uniqueness to his class action in an attempt to evade application of the first-to-file rule. (Defs.' Br. at 13.) While Plaintiff dismisses Defendants' criticisms of his putative defendant class as irrelevant (Pl.'s Br. at 16), in fact, they are central to the policies underlying the first-to-file rule. Indeed, courts have rightly rejected tactics of creative pleading that add or drop defendants to avoid the rule, just as the Court should do so here—particularly where Plaintiff seeks to compound inefficiencies by adjudicating his putative defendant class allegations while substantially *duplicating* litigation of his putative plaintiffs' class allegations. Rather than negating the applicability of the first-to-file rule, Plaintiff's defendant class allegations amplify it.

*The plaintiffs in each action are substantially similar because the putative classes substantially overlap.* Finally, Plaintiff argues that his action involves a "unique plaintiff" and "unique class" with a "North Carolina Plaintiff." (Pl.'s Br. at 3.)

Preliminarily, to the extent Plaintiff seeks to distinguish his case based on a difference in named plaintiffs, in a class action, "the classes, and not the class representatives, are compared." *Blackwell*, 2018 WL 4963166, at *3.

As to the supposedly "unique class," Plaintiff relies on *Dyer v. Air Methods Corp.*, No. 9:20-cv-2309, 2020 WL 7398711 (D.S.C. Dec. 17, 2020), to assert that litigation is not duplicative under the first-to-file rule where "the actions [were] brought by discrete plaintiffs on behalf of discrete classes." *Dyer*, 2020 WL 7398711, at *3. Plaintiff misplaces his reliance on this principle,

however, and he further belies his own nationwide class allegations. In *Dyer*, the plaintiff in the second-filed action sought to represent a class of South Carolina consumers, while the plaintiffs in the earlier-filed cases represented consumers in other states. *Id.* The classes were thus "discrete," indeed, mutually exclusive. Not so here.

The plaintiff in *Guthrie* seeks to represent a nationwide class of past and present purchasers and lessees of 2021 and 2022 Mazda CX-30, 2021 CX-5, 2021 CX-9, 2021 and 2022 Mazda3, and 2021 Mazda6 model vehicles. (*Guthrie* Dkt. 39 ¶ 1 (attached as Ex. 8 to Defs.' Br.).) Likewise, the *Farina* Plaintiff also seeks to represent a nationwide class of past and present purchasers and lessees of 2021 Mazda3, 2021 Mazda6, 2021 CX-30, 2021 CX-5, and 2021 CX-9 model vehicles—i.e., the same putative class vehicles. (FAC ¶ 1.) And, as further discussed *infra*, the injuries allegedly suffered by these putative classes stem from the same underlying factual allegations (i.e., the same alleged defect, its effects, and MNAO's alleged knowledge of and response thereto). Indeed, Plaintiff has now at least twice conceded the factual overlap of the cases, once in his Opposition to the instant motion (Pl.'s Br. at 14 (arguing that the "only overlap is the defective engine itself") and once in support of his motion for early discovery, which he brings to oppose, in part, the instant motion. (*See* Dkt. 36 (stating that the "docket in the California action indicates that while there may be overlapping facts, e.g., excessive oil consumption. . .").)

There is thus substantial overlap across these putative classes; indeed, the putative class in *Guthrie* is broader than the putative class in the instant action.

**B. The issues in *Farina* and *Guthrie* substantially overlap: both seek adjudication regarding liability as to the same alleged defect in the same putative class vehicles.**

Defendants similarly established that the *Farina* and *Guthrie* matters involve adjudication of the same underlying facts, making them substantially similar for purposes of the first-to-file

rule. Plaintiff does nothing in his opposition to dispute this; indeed, he appears to concede the substantial overlap of factual issues by arguing that the "only overlap is the defective engine itself." (Pl.'s Br. at 14.) Plaintiff concedes, as Defendants asserted, that both cases—regardless of the theories of relief—involve questions of fact involving the same putative class vehicles, the same alleged valve stem defect, MNAO's alleged knowledge about and concealment of the alleged defect, and MNAO's alleged failure to provide an adequate repair. (Defs.' Br. at 13.)

Consider the following overlap in allegations from the operative complaints in each action. According to the plaintiffs in each action:

- The putative class vehicles "contain defective valve stem seals that allow engine oil to leak into the Class Vehicles' combustion chamber. . ., which causes the Class Vehicles to consume an excessive amount of engine oil in between regular oil change intervals," "places the Class Vehicles at an increased risk of engine failure" and "causes damage to the Class Vehicles' engines[.]" (FAC ¶ 2; *Guthrie* Dkt. 39 ¶ 2.)

- On November 10, 2020, "Mazda acknowledged" "that some of the Class Vehicles consume an excessive amount of engine oil, a symptom of the Valve Stem Seal Defect. Specifically, on that date, Mazda updated its 'High Engine Oil Consumption' 'M-Tips Bulletin' to its dealerships, M-Tips No.: MT-005/20, to include, inter alia, 2021 CX-5, 2021 CX-9, and 2021 Mazda6 vehicles, and noted that 'Some customers may complain about high engine oil consumption.'" (FAC ¶¶ 47–48; *see Guthrie* Dkt. 39 ¶ 112.)

- "The above M-Tips Bulletin provides a process for Mazda dealerships to measure a vehicle's engine oil consumption. Specifically, it directs Mazda dealers to measure a vehicle's engine oil consumption after driving 1,200 miles and states that '[n]o repair is necessary' where a vehicle consumes less than one liter (1.06 quarts) of engine oil within 1,200 miles. However, Mazda's Owner's Manual and Warranty advise that the recommended oil service interval for Class Vehicles is the earlier of 10,000 miles or one year. Thus, according to Mazda, a vehicle needs to consume more than eight quarts of engine oil between recommended oil change intervals in order to necessitate a repair for excess oil consumption." (FAC ¶¶ 49–51; *see Guthrie* Dkt. 39 ¶ 115–16.)

- "There is nothing normal or expected about this rate of oil consumption . . . ." (FAC ¶ 51; *Guthrie* Dkt. 39 ¶ 115–16.)

- A bulletin dated October 4, 2021 "directs dealers to minimize the severity of the Valve Stem Seal Defect to Class Vehicles owners…. Notably, Mazda does not claim that engine oil leaking into the combustion chamber will not cause

long term engine damage, but only that it purportedly 'will not cause any immediate damage.'" (FAC ¶¶ 56–57; *Guthrie* Dkt. 39 ¶ 123.)

Plaintiff further describes the same technical documents as those described in the *Guthrie* complaint, using substantially overlapping language, (*compare e.g.*, FAC ¶¶ 53–59 *with Guthrie* Dkt. 39 ¶¶ 118–119, 122–24), makes almost identical allegations of MNAO's knowledge of the alleged defect (*compare, e.g.*, FAC ¶¶ 78–79, *with Guthrie* Dkt. 39 ¶¶ 140–41), and ultimately seeks substantially overlapping relief, including damages (actual and statutory), equitable relief, and a recall/repair of the putative class vehicles. (*Compare* FAC at 26–27 *with Guthrie* Dkt. 39 at 104–05.) Plaintiff ignores this reality, as he did in the prior briefing on this motion.

These are the "central issues" in each action. *Troche*, 2011 WL 3565054, at *3. Yet, Plaintiff would have two different courts and juries address and resolve many of the exact same—verbatim, even—alleged class "common issues":

- "whether the Class Vehicles suffer from the Valve Stem Seal Defect";
- "whether the Defendant knows about the Valve Stem Seal Defect and, if so, how long Defendant has known of the Defect";
- "whether the defective nature of the Class Vehicles' valve stem seals constitutes a material defect";
- "whether Plaintiff and the other Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction"; and
- "whether Defendant knew or reasonably should have known of the Valve Stem Seal Defect contained in the Class Vehicles before it sold or leased them to Class Members."

(FAC ¶ 97; *Guthrie* Dkt. 39 ¶ 162.)

Attempting to side-step this, Plaintiff focuses on his Clean Air Act (CAA) and his purportedly distinguishing federal claims (*see, e.g.*, Pl.'s Br. at 8, 14), and briefly references that

9

he is relying on MNAO's emissions warranties, rather than its New Vehicle Limited Warranty (NVLW).[1] (*See* Pl.'s Br. at 10.) This analysis is non-responsive.

*First*, Plaintiff's entire state-versus-federal dichotomy is a false one, as it simply does not matter for purposes of the first-to-file rule. Once again, the presence of additional or different claims does not require setting aside the rule; instead, the inquiry focuses on whether the two actions involve the "same factual issues."[2] *Troche*, 2011 WL 3565054, at *3; *Family Dollar Stores v. Overseas Direct Import Co., Ltd.*, No. 2:10-cv-278, 2011 WL 148264, at *2 (W.D.N.C. Jan. 18, 2011). These cases do.

*Second*, as Defendants showed, Plaintiff's CAA claims do not prevent application of the first-filed rule. (*See generally* Defs.' Br. at 14–15.) Plaintiff's factual allegations in support of his claims—to the extent there are any—still center around the same putative class vehicles, the same alleged defect, the same technical documents concerning the alleged defect, and MNAO's knowledge of and response to the alleged defect. The allegations of emissions violations and MNAO's alleged failure to properly respond thereto—whether they support a claim for breach of warranty or under the CAA—stem entirely from the same alleged defect in the *Guthrie* complaint. Plaintiff merely asserts additional causes of action. In short, nothing in Plaintiff's CAA claim

---

[1] Plaintiff also incorrectly states that his "amended complaint, just like the original one, plainly outlines that Mazda, as required by law, warrants both defect and performance of its emission systems." (Pl.'s Br. at 6.) In fact, as outlined in Defendants' brief, Plaintiff's original complaint mentioned nothing about Mazda's emissions warranties or any breach thereof, and instead relied solely on Mazda's NVLW. (Defs.' Br. at 7; *see also* Dkt. 33 (Defs.' Br. in Supp. of Rule 12(b)(6) Motion to Dismiss) at 3–6.)

[2] Plaintiff also ignores that he has plead a state law claim for civil conspiracy and that his own breach of express or implied warranties—regardless of whether it is based on a federally-mandated emissions warranty—will rest on a predicate state law cause of action, since a Magnuson-Moss Warranty Act claim merely provides a federal remedy for an underlying state-law cause of action.

changes the conclusion that allowing these two cases to proceed separately is precisely the sort of judicial waste the first-to-file rule was designed to mitigate. *See Troche*, 2011 WL 3565054, at *3.

*Third*, Plaintiff's arguments that his CAA claims could not be litigated in the *Guthrie* court is entirely undeveloped and incoherent, at best. (*See* Pl.'s Br. at 9–12.) Plaintiff appears to suggest that all potential state claims are preempted where *he* deems them to be "related to" vehicle emissions, a plainly untenable analytical framework. (*Id.* at 10.) Further, Plaintiff appears to suggest that a plaintiff from California has no standing to enforce the CAA, stating that "the State of California has not adopted the CAA" and is "the only state in the nation that holds a waiver under CAA section 209(b) and therefore is the only state in the nation that <u>cannot enforce the CAA</u>." (*Id.* at 10–11 (emphasis original).)

Plaintiff's arguments—in addition to being legally unsupported—are merely an attempt to side-step the relevant analysis on a first-to-file motion and prematurely wade into the merits of the respective actions based on faulty factual assumptions and flawed analysis. Beyond the lack of merit in Plaintiff's convoluted preemption/standing arguments, (1) the first-to-file rule is applicable even where additional or different claims are present, and (2) were the first-to-file rule applied to transfer this action to the *Guthrie* court for consolidation, Plaintiff Farina would be a plaintiff there. Plaintiff's brief fails to explain how and why he would not be permitted to address these arguments to the transferee court, to whom these arguments are better addressed in the first place. And it is further unnecessary to wade into Plaintiff's tortured preemption analysis, because it rests on demonstrably erroneous factual assumptions: *Guthrie* plaintiff Gary Guthrie is from Washington, not California, and he is just *one* of the named plaintiffs in the *Guthrie* action (five of whom are also from states other than California). Again, Defendants already explained this to Plaintiff Farina (Dkt. 25 at 10)—yet he nonetheless persists in this bogus argument premised on

his erroneous (and legally irrelevant) assertions concerning the lead named *Guthrie* plaintiff. (*Guthrie* Dkt. 39 ¶¶ 13–19.)

*Fourth*, to the extent Plaintiff seeks to distinguish the instant action from that in *Guthrie* based on his reliance on MNAO's emissions warranties (rather than its New Vehicle Limited Warranty), Plaintiff's opposition does not develop such an argument. More to the point, Plaintiff does not rebut (as argued by Defendants in their opening brief) that his emissions warranties claims stem from the same core factual allegations and claims alleged in the *Guthrie* action: the same alleged defect, the same alleged concealment, and the same alleged failure to repair. (*See generally* Defs.' Br. at 14–15.)

In sum, Plaintiff has failed to rebut the application of the first-to-file rule.

## II. Plaintiff's assertions that North Carolina is the best forum for litigating his claims is belied by his complaint's allegations and the repeated assertions throughout his opposition that his claims are purely federal and national in scope.

In their motion, Defendants established that the "balance of convenience" favors application of the first-to-file rule, pointing to both the strong factual nexus between Plaintiff's claims and the Central District of California, and the relatively weak nexus between Plaintiff's claims and the instant forum. (Defs.' Br. at 14–18.) Plaintiff responds by asserting that "Farina is a North Carolina citizen who bought his new Mazda from a dealership in North Carolina for an injury he alleges occurred in North Carolina and which is ongoing against North Carolina's environment." (Pl.'s Br. at 17.) But as Defendants pointed out, Plaintiff purports to bring this case as a class representative on behalf of a putative *nationwide* class against a putative *nationwide* class of defendants and a California corporation. Any nexus between Mr. Farina's individual interests and the instant forum are eclipsed by the scope of his own class allegations, both on behalf

12

of the putative plaintiffs' class and the putative defendants' class. Plaintiff's arguments fail to rebut this. Indeed, Plaintiff's opposition spends numerous paragraphs disputing the state law interests involved in his case, which are, in his own view, "purely federal."

And it is further puzzling that Plaintiff would oppose consolidation under the first-to-file rule while also suggesting the same under a multidistrict litigation ("MDL") structure, the application of which would be analyzed under similar convenience factors. To be clear, no party has sought an MDL, and Defendants maintain that an MDL is unnecessary given the ready availability of resort to the first-to-file rule and the limited number of actions filed, which are fully manageable applying the first-to-file rule. But Plaintiff appears to suggest an MDL to preserve remand of his litigation to this forum, even though remand would be pointless where, as according to Plaintiff, the only local interests in this case relate to Mr. Farina himself. And indeed, remand would be particularly unwarranted, given—as discussed and outlined *supra*—the numerous identical common questions that plaintiffs in both cases ask to be resolved on a class-wide basis.[3] Plaintiff would have two different courts duplicate adjudication of these issues, resulting in precisely the sort of inefficiency and waste Defendants' motion seeks to mitigate. More broadly, nothing about this case requires establishing an MDL. There are three cases that involve substantially overlapping parties and facts. Consolidation—if not stay or dismissal—can be accomplished via the first-filed rule.

In short, Plaintiff has failed to rebut that the balance of convenience favors application of the first-to-file rule, or that any other equitable exception should prevent it. Rather, the balance of convenience does not favor allowing Plaintiff's substantially similar claims to proceed separately.

---

[3] To be clear, neither Defendants here nor MNAO in *Guthrie* concede the propriety of classwide treatment, and instead reserve all rights in that respect.

### III.  Plaintiff's various other assertions and accusations lack merit.

Plaintiff's remaining arguments—found throughout his brief—are various accusations that Defendants are supposedly attempting to conceal facts that, once disclosed, reveal that the first-to-file rule is inapplicable. None hold water. They only serve to concede the applicability of the first-to-file rule to Plaintiff's case.

#### A.  There are no supposed "masked admissions."

Plaintiff argues the Court should not apply the first-to-file rule because "Defendants have failed to inform this Court that on January 20, 2023, presumably in accordance with their FRCP 11[4] obligations, Mazda argued to the California Court that plaintiffs in that case lack standing to bring a class action complaint for purchasers located in states where there is no class representative . . . ." (Pl.'s Br. at 13.) Plaintiff quotes from MNAO's reply brief in support of its motion to dismiss the second amended complaint in *Guthrie*, in which MNAO argued that those plaintiffs lack standing to bring claims on behalf of a nationwide class. (*Id.*; *see* Pl.'s Ex. G.) MNAO made this exact argument in its primary motion to dismiss, which it attached to Defendants' brief. (*Guthrie* Dkt. 46 at 23 (attached as Ex. 3 to Defs.' Br.).) This is neither an admission, nor are Defendants concealing it. MNAO is properly defending against the *Guthrie* class action by asserting available defenses.[5] More importantly, however, the *Guthrie* court has not ruled on MNAO's motion.

Moreover, despite his bald references to supposed imperilment of his "Due Process and Petition Clause" rights, Plaintiff fails to explain why he would be precluded from litigating his

---

[4] Plaintiff's vague reference to "FRCP 11" here is entirely unclear. To the extent he intends to refer to Fed. R. Civ. P. 11, he fails to explain—much less support—any such invocation, and it is entirely improper. Again, Defendants previously raised concern with Plaintiff's Rule 11 reference in the earlier briefing on this motion. Plaintiff, in turn, has chosen to make the same reference this round, still without any explanation.

[5] Moreover, nor is MNAO conceding that the *Farina* plaintiff is entitled to a nationwide class.

claim as a named plaintiff in that action—especially were this Court to transfer for consolidation with *Guthrie*.

More broadly, Plaintiff's argument is nothing more than an attempt to side-step that the relevant analysis for determining whether the first-to-file rule should apply is to look at the *putative* classes as alleged in the complaint. And as already established, Plaintiff's putative class here substantially overlaps with that in *Guthrie*. *E.g.*, *Blackwell*, 2018 WL 4963166, at *3 (analyzing the proposed classes in assessing application of the first-to-file rule). Indeed, Plaintiff's argument only highlights that the first-to-file rule is particularly applicable here—i.e., "in a pre-class certification context, as it avoids multiple attempts at certification in two different courts." *Id.* (quoting *Cox c. Air Methods Corp.*, no. cv 1:17-04610, 2018 WL 2437056, at *4 (S.D.W. Va. May 20, 2018) (internal quotation marks omitted).

### B. Plaintiff's serial accusations of "concealment" and "collusion" are factually manufactured and unresponsive to Defendants' motion.

Plaintiff's opposition is saturated with accusations that MNAO is "colluding" with the *Guthrie* plaintiff's counsel and pursuing "a lopsided, un-informed mediation in an attempt to settle" Mr. Farina's claims "in a blatant attempt to monetize a general release of the class claims asserted in Farina's case." (Pl.'s Br. at 3.) Plaintiff further attempts to paint a picture of "a colluded, shared goal to settle on the cheap absent any fact-finding as to the true extent of Mazda's culpability" in which MNAO is allegedly concealing that no discovery has occurred in the *Guthrie* action in contrast to "his own discovery requests served on Defendants" that purportedly "set forth the numerous facts which any responsible class counsel would have in hand prior to mediating a settlement." (*Id.* at 3.) Plaintiff's arguments are factually unsupported and further fail to rebut application of the first-to-file rule to his action.

Nowhere in Defendants' brief do they assert that the Guthrie *litigation has seen discovery: the* Guthrie *litigation has proceeded exactly as far as Defendants described.* (*Compare* Pl.'s Br. at 1 ("Mazda also boldly mischaracterizes the status of the Guthrie action. Most importantly, there has been no discovery. . . ."), *with* Defs.' Br. at 11–12.) In their motion, Defendants represented (and provided docket entries substantiating) that the *Guthrie* action was not only first-filed, but is also significantly further along in litigation, particularly when compared to the instant matter. (*See generally* Defs.' Br. at 5–6, 11–12.) As Defendants explained in both their factual recitation and analysis, the *Guthrie* litigation was removed to the Central District of California on May 25, 2022. (Defs.' Br. at 5.) Following that removal, the case saw two amendments to the complaint and two motions to dismiss (the latter of which was fully briefed and is currently pending). (Defs.' Br. at 11–12.) Further, the *Guthrie* court issued a scheduling order on February 1, 2023, which set dates for discovery and trial; the court also ordered the parties to mediation, which was scheduled for and completed on May 1, 2023. (*Id.* (citing *Guthrie* Dkts. 57–58 (attached as Exs. 9–10 to Defs.' Br.)).)

The *Guthrie* litigation has proceeded exactly as far as Defendants represented and substantiated to the Court. This is merely another in a pattern of baseless accusations which the record easily belies.

*Plaintiff's attempt to undermine the legitimacy of the* Guthrie *mediation process—and by extension, the Central District of California's ability to critically examine and approve any potential proposed settlement—is ill-considered.* To be perfectly clear, Defendants reject any and all assertions of supposed improper collusion or other impropriety by MNAO's pursuit of court-ordered mediation of the substantially similar claims in *Guthrie*. Indeed, Plaintiff's attempt to raise a specter of collusion to undermine the legitimacy of the *Guthrie* proceedings is both factually

spurious and unresponsive to Defendants' motion. What Plaintiff Farina describes as "a colluded, shared goal to settle on the cheap absent any fact-finding as to the true extent of Mazda's culpability" designed to "hoodwink[]" the Central District of California and specifically "preclude Farina's purely federal claims" (Pl.'s Br. at 3, 18) are in fact normal class action proceedings and settlement negotiations which Plaintiff nonetheless attempts to cast with a sheen of malfeasance. The *Guthrie* plaintiffs and MNAO are pursuing all options for resolution of the factual allegations underlying each of these actions under the supervision of a federal District Court judge who would vet any potential proposed class settlement. Plaintiff Farina fails to support his assertion that the *Guthrie* court could or would be readily hoodwinked.

Plaintiff's reliance on his earlier unauthorized and improper discovery requests is further misplaced. Indeed, Plaintiff Farina ignores that this discovery was premature, in violation of the Court's Local Rules, and therefore unenforceable. While Plaintiff chides MNAO for having ignored and not responded to it, that is precisely what MNAO was entitled to do, since the discovery was void *ab initio* having been served before discovery was allowed. Indeed, Plaintiff's recent motion seeking an order allowing early discovery acknowledges this very fact.

### C. Plaintiff's assertion that one of the *Guthrie* plaintiffs lacks standing is irrelevant.

Plaintiff asserts the court should not transfer this case based on the Plaintiff's assertion that the *Guthrie* plaintiff "arguably" lacks injury-in-fact. (Pl.'s Br. at 7–8.) He is again incorrect for several reasons.

*First*, Plaintiff relies on an October 17, 2022 hearing transcript, in which the *Guthrie* plaintiffs' counsel indicated that Mr. Guthrie's vehicle had undergone a repair on the vehicle. Plaintiff Farina ignores, however, the *Guthrie* Second Amended Complaint, which continues to assert that that repair was supposedly inadequate.

*Second,* the Second Amended Complaint in *Guthrie* named additional plaintiffs, a fact Plaintiff Farina here once again fails to square with his analysis.

*Third*, while making this same argument (and failing to address Defendants' prior responses thereto), Plaintiff Farina also ignores that the availability of a repair for this condition rebuts his repeatedly false assertions that no such repair is available. It also ignores his continued failure to explain why he has not sought such a repair for the condition in his own vehicle (assuming such a condition even exists in his vehicle)—despite his acknowledgement that such a repair exists.

*Fourth*, Plaintiff Farina fails to explain why, in the event of transfer, any lack of standing as to any other named *Guthrie* plaintiff would impact him. This is simply another in a long line of factually and legally unsupported arguments which, like all the rest, fails to undermine relief under the first-to-file rule.

## Conclusion

For the foregoing reasons and those stated in its opening brief, Plaintiff has failed to rebut the applicability of the first-to-file rule. The Court should dismiss, stay, or, in the alternative, transfer this litigation for consolidation with the first-filed *Guthrie* action.

[SIGNATURE PAGE TO FOLLOW]

Respectfully submitted this 1st day of June, 2023.

/s/Evan M. Sauda_____
Evan M. Sauda, N.C. Bar No. 32915
NELSON MULLINS RILEY & SCARBOROUGH LLP
301 S. College Street, 23rd Floor
Charlotte, North Carolina 28202
T: (704) 417-3000
F: (704) 377-4814
Email: Evan.Sauda@nelsonmullins.com

Robert L. Wise, Admitted *Pro Hac Vice*
Danielle Gibbons, Admitted *Pro Hac Vice*
NELSON MULLINS RILEY & SCARBOROUGH LLP
901 East Byrd Street, Suite 1650
Richmond, Virginia 23219
T: 804.533.2900
F: 804.616.4129
Email: Robert.Wise@nelsonmullins.com
Email: Danielle.Gibbons@nelsonmullins.com

*Counsel for Mazda Motor of America, Inc. d/b/a*
*Mazda North American Operations & Lake Norman*
*Auto Mall, LLC d/b/a Keffer Mazda*

/s/Jeremy A. Kosin_____
Jeremy A. Kosin, N.C. Bar No. 36116
Kenneth B. Rotenstreich, N.C. Bar No. 14293
TEAGUE ROTENSTREICH STANALAND FOX &
HOLT PLLC
Post Office Box 1898
Greensboro, North Carolina 27402-1898
T: (336) 272-4810
F: (336) 272-2448
Email: jak@trslaw.com
Email: kbr@trslaw.com

*Counsel for Lake Norman Auto Mall, LLC d/b/a*
*Keffer Mazda*

19