# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

FRANCIS J. FARINA,

                                Plaintiff,

        vs.

MAZDA MOTOR OF AMERICA, INC.,
d/b/a MAZDA NORTH AMERICAN
OPERATIONS and KEFFER MAZDA,

                         Defendants.

Civil Action No. 3:23-cv-00050

### MNAO's Opposition to Plaintiff's Motion for Sanctions

As anticipated in MNAO's reply brief in support of its own Motion for Sanctions (*see* Dkt. 100 at 1 n.1), Farina and his counsel have filed a tit-for-tat Motion for Sanctions, claiming that MNAO's own motion was factually and legally baseless and purportedly contained "*ad hominem*" attacks. (Dkt. 101 at 1.) As MNAO forewarned, the arguments in Farina's Motion for Sanctions may sound familiar to the Court—indeed, the only substantive differences between Farina's opposition to MNAO's motion for sanctions (Dkt. 99) and his instant sanctions motion are in the introduction and concluding statements in each. The argument sections are nearly verbatim copy-and-paste reproductions, with only one or two clauses tweaked to reflect the procedural postures of each filing.

Farina's Motion for Sanctions is yet another example of his misconduct in the form of "copy-and-pasted" arguments that demonstrate his and his counsel's "outright disregard for opposing counsel and the court's limited time and resources" and which causes "unnecessary delay and needlessly increase[s] the cost of litigation." *Benbow v. Ingram*, No. 7:23-cv-292, 2025 WL 1303957, at \*10 (E.D.N.C. May 5, 2025). And MNAO must now expend additional

time and resources to respond to Farina's motion, while Farina continues to delay the finality of the Court's judgment and needlessly prolong his post-judgment activities—now protracted into their fifth month—on underlying claims that are barred by res judicata.

In opposing Farina's sanctions motion, where appropriate, MNAO attempts to minimize work for the Court and responds to Farina's verbatim arguments with its own verbatim responses from its reply on its own sanctions motion. Put simply, Farina's opposition to MNAO's motion for sanctions utterly fails to rebut that sanctions are appropriate, and his facsimile arguments provide no further basis for sanctions against MNAO or its counsel. The Court should deny Farina's motion.

<div align="center">

**Argument**

</div>

In moving for sanctions, MNAO showed that Farina's post-judgment filings (1) contained serial statements of fact that were false and lacked reasonable inquiry in violation of Rule 11(b)(3), (2) were legally frivolous in violation of Rule 11(b)(2), and (3) amply demonstrated improper purpose, in violation of Rule 11(b)(1). To dissolve any inference of incompetence and cement its showing of bad faith, improper purpose, and the need for a significant deterring sanction, MNAO also showed how Farina's post-judgment motions are part of a pattern of the kind of improper conduct that Rule 11 and 28 U.S.C. § 1927 are designed to deter that has spanned this litigation and into the *Guthrie* and *Duffy* litigations as well. Farina fails to show that MNAO's motion and arguments were not fully justified.

I.    **MNAO fully showed how Farina's serial misstatements that his vehicle does not have the *Duffy* infotainment system warranted sanctions.**

In moving for sanctions, MNAO showed that Farina's post-judgment motions contained serial misstatements of fact that were not supported by reasonable inquiry. A primary basis for MNAO's motion was Farina's serial, material misstatements that his vehicle

<div align="center">

2

</div>

does not have a Mazda Connect infotainment system. (*See* Dkt. 98 at 10–12.) Farina himself made this misstatement material by relying on it to assert that the preliminarily approved settlement in *Duffy v. Mazda Motor of America, Inc.* was "gerrymandered" and fraudulent, intended to "sweep" in his claims even though his vehicle supposedly does not have an infotainment system (which it does). (*See id.* 14–15.) Farina claimed that MNAO and its counsel "intentionally defrauded" the Court based on their supposed failure to direct the Court's attention to the *Duffy* settlement, with his accusations of fraud directly supported by the falsehood that his vehicle does not have the infotainment system at issue in *Duffy*. (*See, e.g.*, Dkt. 98 at 1–4, 14–15.) MNAO's motion included numerous examples throughout his post-judgment filings where Farina serially repeated this false claim, as well how it was one of the two cornerstones of his Fed. R. Civ. P. 59/60 motion. (Dkt. 98 at 1–4, 10–12; *see also* Dkt. 91 at 4 (collecting examples); *see also* Dkt. 94 at 4; Dkt. 95 at 6.)

Nevertheless, Farina bases his motion for sanctions on the assertion that MNAO "distort[ed] the record," and that he had an "[o]bjective" basis to claim his vehicle does not have an infotainment system. (Dkt. 101 at 7–10.) His attempt to portray MNAO's sanctions motion as quibbling about a technical question of legitimately disputed fact fails, and it does not rebut the veracity of MNAO's motion.

A.    **Farina's assertions that MNAO and its counsel "distort the record" are false.**

Farina first argues that MNAO "distort[s]" the record in charging Farina and his counsel with admittedly making "false statements of material fact about the existence or non-existence of a Mazda Connect infotainment system in Farina's vehicle." (Dkt. 101 at 7.) To be clear, whether or not Farina's vehicle had an infotainment system was a readily observable fact, but Farina nevertheless misrepresented to the Court that his vehicle does not have an infotainment system to create a veneer of fraud and cover-up and to support his claim that the judgment in this matter should be re-opened or vacated. MNAO's motion amply demonstrated that Farina repeatedly

3

misrepresented to the Court that his vehicle does not have an infotainment system and that such statement was untrue, as any reasonable inquiry would have established. (Dkt. 98 at 10–12; Dkt. 91 at 2–7.) Nowhere in his motion does Farina deny that his vehicle indeed has a Mazda Connect infotainment system, nor that his assertions to the contrary were false. Instead, he focuses on whether or not he and his counsel "admittedly" made such false statements or failed to conduct a reasonable inquiry, as MNAO's motion showed. (Dkt. 101 at 7–9.)

Specifically, MNAO recounted its counsel's conversation with Farina's counsel where the falsehood about his vehicle not having an infotainment system was pointed out, explicitly explaining that (1) the infotainment system is the touchscreen in the center of the vehicle's dashboard that houses, displays, and allows the owner to access various vehicle features, such as the display for the rear camera and entertainment controls and Bluetooth, and (2) the 2021 Mazda6 included the infotainment system at issue in *Duffy*, as the vehicle owner's manual demonstrates (which is why it was properly included in the *Duffy* settlement). (Dkt. 98 at 11–12; Dkt. 92 ¶ 2.) This explanation resulted in Farina's counsel writing back to "correct the record" to explain that Farina's vehicle indeed has a dashboard display screen, "can connect to Bluetooth and Sirius, and has a back[-]up camera." (Dkt. 98 at 11–12; Dkt. 91 at 6–7; Dkt. 92-1 at 1.) As MNAO explained both during the initial conversation and in the subsequent exchange on Farina's attempt to "correct the record," what Farina's counsel was talking about *is* the Mazda Connect infotainment system in his vehicle. (Dkt. 91 at 3–6; Dkt. 92 ¶¶ 2, 5; Dkt. 92-2 at 2–3.) Farina and his counsel nevertheless continued to assert that his vehicle does not have an infotainment system thereafter, despite having affirmatively confirmed to MNAO's counsel the opposite. (*E.g.*, Dkt. 94 at 4.)

For Farina to now claim that his counsel never admitted to his vehicle having the subject infotainment system because the email from his counsel "did not even *mention* that term" (Dkt.

101 at 8) ignores the substance of what was discussed between the parties' counsel: (1) MNAO's counsel clearly explained that the infotainment system is the touchscreen in the center of the vehicle's dashboard that houses and allows access to various vehicle features like the back-up camera and Bluetooth; (2) MNAO asked Farina's counsel to confirm whether or not Farina's vehicle had this feature, a readily verifiable fact; (3) Farina's counsel *affirmatively represented that he had been in Farina's vehicle and there was supposedly* no *touchscreen display with those features*; (4) Farina's counsel followed-up after speaking with his client to "correct the record" and to represent that, in fact, the vehicle does have "a screen, can connect to Bluetooth and Sirius, and has a backup camera." (*See generally* Dkt. 92 ¶¶ 2, 3; Dkt. 92-1 at 1.) The very features Farina's counsel admitted Farina's vehicle has— "a screen, can connect to Bluetooth and Sirius, and has a back[-]up camera" (Dkt. 101 at 8)—are all components and features of the Mazda Connect infotainment system.[1] In other words, Farina's counsel acknowledging his vehicle has these features and functionalities was precisely an admission that his vehicle has a Mazda Connect infotainment system—contrary to Farina's serial misstatements in his filings with the Court, contrary to his counsel's express (mis)representation to MNAO's counsel in their communications,

---

[1] Farina asserts his vehicle "does not have any of the services in para. 37 in *Duffy*, nor Mazda connect nor navigation." (Dkt. 101 at 8.) Presumably, he refers to *Duffy v. Mazda Motor of America, Inc.*, No. 3:24-cv-00388-BJB-CHL (Dkt. 1) (W.D. Ky. June 28, 2024). Paragraph 37 of that complaint recites: "As connectivity, vehicle safety, and an enhanced in-vehicle user experience became a priority for consumers, automotive manufacturers began building in-vehicle infotainment systems to connect with all smart automotive technologies and integrate them with each other to provide a superior driving experience." The *Duffy* complaint further describes specifically the Mazda Connect infotainment system, such as in paragraph 52: "The infotainment system plays a critical role in modern vehicles. It is the gateway between the user and the Vehicle's safety, navigation, communications, and entertainment features. Among other operations, the Vehicle's infotainment system allows the Vehicle owner to operate the audio systems in the Vehicle, *operate the backup camera, and operate a Bluetooth-enabled mobile telephone or other device*." (Emphasis added). It is a central screen-driven system to operate audio systems, a backup camera, and Bluetooth compatibility—all features Farina's counsel admitted Farina's vehicle has, which thereby admits his vehicle has a Mazda Connect infotainment system.

5

and contrary to his arguments in his recent opposition and now this motion.

Farina next argues that MNAO "distort[s]" the record by "trump[ing] up the existence or non-existence" of the infotainment system in Farina's vehicle. (Dkt. 101 at 8.) Farina attempts to sidestep his serial misstatements by arguing that they were not "of 'cornerstone' significance to Farina's case." (Dkt. 101 at 10.) The Court need look no further than Farina's own filings to dispense with this argument. For example, his memorandum in support of his Rule 59/60 motion relies on his *Duffy*/infotainment-system misstatements as the "second basis" for that motion and "an independent basis for vacating the June 2, 2025, Order and judgment." (Dkt. 83-4 at 2, 3.) In his underlying Rule 59/60 motion, Farina likewise asserted from the outset that *Duffy* was an attempt to sweep Farina into a settlement "concerning an infotainment system that he does not have." (Dkt. 83 at 2, ¶ 3; *id.* at 8, ¶ 27 ("This is particularly so as Farina's vehicle does not even have the subject 'infotainment' system.").) This issue is far from a "Red Herring," as Farina asserts. (Dkt. 92-2 at 1 (email).) Farina himself made it a central focus of his post-judgment filings—indeed, a supposedly second, independent basis for granting post-judgment relief—and he made his repeated falsehoods concerning *Duffy* and his vehicle supposedly not having a Mazda Connect infotainment system a front-and-center issue. Farina's claims about the *Duffy* settlement—including his factually baseless claim that his vehicle was improperly included within it—were the basis for his brash and baseless claims that MNAO and its counsel had "gerrymandered" *Duffy* to sweep his vehicle in and "intentionally defrauded" the Court by not disclosing the *Duffy* settlement. (Dkt. 85 at 4; *e.g.*, Dkt. 89 ¶¶ 1–4.) MNAO has distorted nothing. Only Farina has.

   B.   **Beyond Farina's counsel's admissions, MNAO amply demonstrated that Farina's assertions were verifiably false and lacked any reasonable inquiry, and that Farina lacked any "legitimate, objective facts" otherwise.**

Farina next argues that "to whatever extent the existence or non-existence of an infotainment system may matter in the grand scheme of things, Farina and his counsel have had

6

all along a legitimate basis for their contention that Farina's vehicle and those like it do not have this system." (Dkt. 101 at 10.) Beyond Farina's counsel's own admissions that Farina's vehicle has an infotainment system—a fact that they verified after one phone call to their client, *after* misrepresenting the opposite to the Court across numerous filings—MNAO otherwise amply showed that Farina's repeated assertion that his vehicle was improperly included in the *Duffy* settlement was false . . . and readily verifiably so.

MNAO amply showed what a reasonable inquiry would have revealed about "the existence or non-existence of an infotainment system" in Farina's vehicle. MNAO showed how reference to the owner's manual for Farina's 2021 Mazda6 vehicle explains in detail the Mazda Connect infotainment system, its operations, and its functionality. (Dkt. 98 at 12 (citing Dkt. 91 at 5 n.5).) MNAO showed how his owner's manual specifically identifies the CMU his vehicle has, thereby debunking his repeated assertions that his vehicle does not have a CMU (a necessary component of an infotainment system). (Dkt. 98 at 11; Dkt. 91 at 5; Dkt. 92 ¶ 2.) And MNAO showed how publicly available service alerts show troubleshooting "to diagnose MAZDA CONNECT concerns" in various models, including the 2021 Mazda6. (Dkt. 98 at 11; Dkt. 91 at 5.)

Yet Farina and his counsel continue to rely on their own unfounded misinterpretation and misunderstanding of MNAO witness Jerry Ward's testimony in *Guthrie*, claiming this as their "legitimate, objective facts" that MNAO supposedly "ignore[d]." (Dkt. 101 at 10–11.) MNAO has not ignored this testimony. To the contrary, it has already repeatedly debunked Farina's reliance on it and explained to Farina's counsel, even before serving its sanctions motion, their erroneous misunderstanding of its import. Mr. Ward testified that the 2021 Mazda6 does not have Mazda Connected Services because it is it is not equipped with a "telematics control unit," or a TCU. A "TCU" is not a "CMU." MNAO explained to Farina's counsel the distinction between a CMU and

TCU. (*E.g.*, Dkt. 91 at 4–7.) The former allows connectivity *within* the vehicle and is a feature of the infotainment system with which Farina's vehicle is equipped. (*Id.*; Dkt. 92 ¶ 2.) The latter allows connectivity of the vehicle with an *outside* network (*e.g.*, the Internet), which Farina's vehicle did not have, nor did any other 2021 Mazda6 vehicles. (Dkt. 91 at 4–6; Dkt. 92 ¶ 2.) Likewise, MNAO explained that Farina was conflating the Mazda Connect infotainment system, which Farina's vehicle and all other 2021 Mazda6 vehicles have, with Mazda Connected Services, which neither Farina's vehicle nor any other 2021 Mazda6 vehicle has. (Dkt. 91 at 4–6.)

In short, Mr. Ward's testimony was concerning an entirely different component and functionality and provides no support whatsoever for Farina's assertion that his vehicle does not have a Mazda Connect infotainment system nor a CMU—indeed, it has both.[2] (Dkt. 91 at 3–6 (discussing Farina's misplaced reliance on the Ward testimony concerning the entirely different Mazda Connected Services feature available in other vehicles).) In addition, nowhere in that cited testimony did Mr. Ward mention the Mazda Connect infotainment system, nor a CMU—instead, it is Farina who inexplicably conflates Mazda Connect infotainment system with Mazda Connected Services and does likewise with CMU and TCU (oddly asserting that "TCU" is an acronym for "Connectivity Master Unit"). Any conflation between these different components and different systems is wholly a product of Farina and his counsel's imagination, combined with their continued resistance to the truth. Regardless, Farina's baseless and unfounded confusion and conflation of these distinct components and functionalities are hardly "legitimate, objective facts."

What is more, Farina and his counsel do not have to—and never had to—take MNAO's

---

[2] To this point, Farina also writes: "Mazda Counsel do not even attempt to contest the correctness of this testimony by Mazda's own employee; they simply ignore it." (Dkt. 101 at 10.) There is nothing to correct. Mr. Ward's testimony was entirely accurate: the 2021 Mazda6 is not equipped with a TCU or Mazda Connected Services. But the 2021 Mazda6, including Farina's, *does* have the Mazda Connect infotainment system (and a CMU, which allows it to operate).

counsel's "self-serving definition." (Dkt. 101 at 10.) All they needed to do was look up "telematics control unit," which enables Mazda Connected Services, for abundant definitions and explanations of this component and feature—in other words, to conduct even a minimally reasonable inquiry. The same goes for "infotainment system." Farina and his counsel likewise could have performed a simple Internet search for "Mazda Connect" as well as "Mazda Connected Services," which would have further revealed the difference between them, as well as that while the 2021 Mazda6 has the Mazda Connect infotainment system, it does not have Mazda Connected Services. (*See* Dkt. 100 at 11 n.5.) Instead, Farina and his counsel relied on their uninformed and unsupported misreading of the testimony in *Guthrie* to lodge and serially perpetuate a fundamental misstatement of fact underpinning Farina's post-judgment filings—and to cry "fraud" in doing so. That is not a reasonable inquiry. Worse, they continued to make the same misrepresentations to the Court even *after* MNAO explained their error to them in telephone conference and explicitly pointed them to relevant resources. (*See, e.g.*, Dkt. 91 at 3–7; Dkt. 92 ¶¶ 2, 5–6 (describing July 10, 2025, conference during which MNAO's counsel explained that Farina's counsel were falsely equating a TCU and CMU, and subsequent correspondence in which Farina's counsel confirmed his vehicle has an infotainment system); Dkt. 94 at 4 (July 18, 2025, filing in which Farina continues to state "Mazda and its lawyers knew, and the Duffy plaintiffs would have known had they done any worthwhile discovery, that the 2021 Mazda6 vehicles do not contain the defective CMU/TCU").)

Farina and his counsel's baseless conflation of these components, features, and technologies is not the product of any reasonable inquiry, nor can it be explained as merely good-faith confusion, as that has been soundly corrected by MNAO. (*E.g.*, Dkt. 91 at 3–6.) Farina's conduct is all the more unreasonable given that MNAO witness Ward's testimony from *Guthrie*

9

was from October 2023—two years ago. (Dkt. 101 at 10.) In all the time that has since passed, Farina has done no reasonable inquiry into the fundamental differences between a CMU and TCU, nor between a Mazda Connect infotainment system and Mazda Connected Services. Instead, he has steadfastly and unreasonably entrenched further in his erroneous position and misstatements that Ward's testimony somehow supports that neither Farina's vehicle nor any other 2021 Mazda6 vehicles has a Mazda Connect infotainment system. *See Bus. Guides, Inc. v. Chromatic Comms. Enters., Inc.*, 498 U.S. 533, 551 (1991) ("The standard is one of reasonableness under the circumstances").

MNAO was fully justified in asserting that Farina failed to conduct a reasonable inquiry before serially misrepresenting to the Court that his vehicle does not have an infotainment system. His response—confirming that the sole basis for his assertion was Mr. Ward's testimony about a different vehicle feature and component—confirms that sanctions against Farina are warranted.

<p style="text-align:center">*     *     *</p>

Why Farina continues to refuse to acknowledge the fundamental reality that his vehicle has—and all 2021 Mazda6 vehicles have—a Mazda Connect infotainment system is anyone's guess. Presumably, he attempts to elude this reality and avoid expressly admitting his serial misstatements in the hopes of avoiding sanctions. But his obfuscation and evasion speak as loudly as any express admission. Regardless, the facts remain that his vehicle has a Mazda Connect infotainment system, that his repeated assertions to the Court to the contrary were and remain false, that he made this falsehood a central underpinning of his post-judgment filings throughout (and even repeated them in *Duffy* in his improper attempted mass opt-out there), and that all of this could have been avoided had Farina and his counsel made *any* form of reasonable inquiry— including even after MNAO counsel explained why they were wrong. Instead, Farina and his

<p style="text-align:center">10</p>

counsel have entrenched further, refusing to withdraw their offending filings, and instead moving for sanctions of their own. The Court should deny Farina's motion.

## II. Farina fails to rebut MNAO's showing that his post-judgment motions were factually and legally frivolous on numerous other grounds, and his attempt to portray MNAO's motion as including misrepresentations is easily discredited.

In moving for sanctions, MNAO showed that Farina's post-judgment motions violated Rule 11 and warranted sanctions on numerous other grounds. Farina's sanctions motion fails to show otherwise, let alone support that MNAO's motion was sanctionable.

### A. Farina ignores MNAO's numerous other cited examples demonstrating that his filings are factually infirm to substantiate its sanctions motion.

In moving for sanctions, MNAO cited to other assertions in Farina's post-judgment filings that were equally factually frivolous. MNAO cited to the numerous instances in which Farina cried fraud, conspiracy, and cover-up, all as equally unsubstantiated as his misrepresentation that his vehicle does not have an infotainment system and was therefore improperly included in the *Duffy* settlement. (Dkt. 98 at 14–15.) MNAO showed that these types of "sensational allegations" and "conspiracy-driven conjecture" have been repeatedly affirmed as factually infirm under Rule 11. (*Id.* at 15 (citing, *e.g.*, *In re Kunstler*, 914 F.2d 505, 515 (4th Cir. 1990) ("[N]umerous irrelevant, unsubstantiated, and sensational allegations is an appropriate factor for a district court to consider in determining whether the pleading as a whole lacks adequate factual foundation.")).)

Farina does not even attempt to explain or justify this category of facially frivolous claims in his post-judgment motions. For example, while focusing his motion on the purported frivolity of MNAO moving for sanctions based on his misstatements about the infotainment system in his vehicle, he ignores his own use of that misrepresentation to assert that MNAO "*conspired* with its counsel to 'win' by *defrauding the Court*," in reference to the *Duffy* proposed settlement, (Dkt. 89 ¶ 4 (emphasis added)), or that MNAO "twice *moved in the Shadows* to try and 'deal with' these

11

claims through Gerrymandered settlements," again referring to the *Duffy* settlement, (Dkt. 83 ¶ 30 (emphasis added)), or that MNAO's counsel, Mr. Wise, "*intentionally defrauded this Court* simply to 'win' at all costs," again in reference to *Duffy* (Dkt. 85 at 4 (emphasis added)). None of these statements are remotely substantiated.

Likewise, MNAO showed that Farina's attacks extended to the Court, charging it with dereliction of duty, ignoring his arguments, failing to read submitted materials, and merely "swallowing without chewing" MNAO's arguments. (Dkt. 98 at 16.) Farina's opposition to MNAO's motion ignores this entirely. Indeed, he offers no explanation, much less any justification, for his baseless attacks on the Court.

These are not the only examples from MNAO's motion. His failure to address—let alone justify—his numerous other unsubstantiated allegations directed at both MNAO and its counsel as well as the Court concedes the veracity of MNAO's sanctions motion.

### B. Farina fails to rebut MNAO's showing that his post-judgment motions were also legally frivolous.

Attempting to otherwise defend the propriety of his flawed post-judgment submissions (all of which are saturated with and rely on his material misstatements concerning *Duffy* and his vehicle supposedly not having a Mazda Connect infotainment system), Farina couches his post-judgment filings as legitimate and well-taken arguments that lawyers make all the time. (Dkt. 101 at 11–15.) He asserts that MNAO's "balking boils down to nothing more than *arguments* of an advocate on the ultimate merits of the motions." (*Id.* at 13.) Hardly. The tone of Farina's raft of post-judgment filings immediately dispels any notion that his filings are good-faith advocacy. As described in MNAO's motion, Farina's post-judgment filings assert that:

- MNAO "conspired with its counsel to 'win' by defrauding the Court," in reference to the *Duffy* proposed settlement, (Dkt. 89 ¶ 4);

12

- MNAO "twice moved in the Shadows to try and 'deal with' these claims through Gerrymandered settlements," again referring to the *Duffy* settlement, (Dkt. 83 ¶ 30);

- MNAO's counsel, Mr. Wise, "intentionally defrauded this Court simply to 'win' at all costs," again in reference to *Duffy*, (Dkt. 85 at 4);

- MNAO and its counsel "flat out lied," to the Court regarding assertions Farina made in *Guthrie* which that court rejected as baseless, (Dkt. 89 ¶ 8); and

- Outside auditor KPMG "aid[ed] and abet[ted]" Mazda, baselessly implicating them both in a criminal conspiracy, (Dkt. 89 ¶ 8).

(*See* Dkt. 98 at 14–15, 20–21.) As discussed previously, Farina does not attempt to justify his bold assertions in his filings. They are far from the only examples of Farina's improper advocacy.

Moreover, Farina also ignores that—aside from his misstatements concerning *Duffy* and his vehicle supposedly not having an infotainment system, when it does—everything he raises in his post-judgment submissions is nothing more than a rehash of what he already argued to this Court and lost, or are otherwise improper attempts to raise new or reframe his prior arguments in an attempt to get a do-over, neither of which support relief under Rules 59(e) or 60(b). MNAO did not seek sanctions when Farina opposed dismissal here, even though his claims clearly fall within the *Guthrie* settlement and release. No, MNAO only moved for sanctions when Farina moved for post-judgment relief based on a fundamental misstatement and misrepresentation of fact concerning his vehicle not having an infotainment system, and then used that as a "hook" of supposedly new evidence to re-argue the same things this Court already considered and rejected. Indeed, he continues to argue the Court ignored and failed to address his jurisdiction and standing arguments, despite the Court specifically addressing and rejecting those same arguments. (Dkt. 101 at 13 (acknowledging Farina's post-judgment motions continue to press his standing and

jurisdiction arguments); Dkt. 81 at 5–6 (Court specifically addressing those same arguments).)

This is an abuse of Rules 59/60. *Melendez v. Sebelius*, 611 Fed. App'x 762, 764 (4th Cir. 2015) (observing that a party may not employ Rule 59(e) to "relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment"); *McGhee v. Aetna Life Ins. Co.*, No. 3:13-cv-481-MOC, 2015 WL 509844, at \*1 (W.D.N.C. Feb. 6, 2015) (Cogburn, J.) (noting that Rule 59 is not properly invoked to "give an unhappy litigant one additional chance to sway the judge"); *e.g.*, *Kirby v. Gen. Elec. Co.*, 210 F.R.D. 180, 189–90 (W.D.N.C. 2000) (granting sanctions for post-judgment motions that were "legally unjustified, frivolous, and had absolutely no chance of success" in violation of Rule 11(b)(2)). Indeed, Farina does not attempt to distinguish the cases MNAO cited that imposed sanctions for post-judgment motions on similar circumstances, let alone demonstrate how MNAO's reliance on them was so unjustified as to warrant sanctions itself.

Farina further argues that he and his counsel "have advanced the additional, perfectly legitimate argument that this Court should have granted 'Farina's outstanding request for permission to file the proposed Second Amended Complaint.'" (Dkt. 101 at 14.) But again, this is just another example of Farina improperly attempting to obtain a do-over. To be clear, there was *no* outstanding motion for leave to file a Second Amended Complaint at the time the Court entered judgment dismissing this case. And while Farina appended a Second Amended Complaint to his opposition to MNAO's motion to dismiss, he steadfastly opposed dismissal as to his original complaint and insisted it was sufficient and required no amendment. And he has not pointed—and cannot point—to any motion for leave to amend properly brought before dismissal. Rather, it was only *after* dismissal that he (1) argued for the first time that leave to amend was actually critical, and (2) thereafter formally moved for leave to amend. (*See* Dkt. 88; *see also, e.g.*, Dkt. 93 at 6–8

14

(MNAO's response to Farina's motion to amend, showing how Farina insisted before entry of the judgment that the appended SAC was to "clear up any ambiguities" but that the "relief in the SAC has not changed"); Dkt. 83 ¶ 32 (arguing the Court failed to consider his SAC "that, palpably, establishes the 'predicate' thereto as the vehicle class vehicle emissions systems").)

In this regard, his reliance on *Mayfield v. National Association for Stock Car Auto Racing, Inc.*—a case he did not cite in his earlier post-judgment filings (including his motion for leave to amend)—is entirely misplaced. 674 F.3d 369, 374 (4th Cir. 2012). The standard articulated in *Mayfield* was *significantly* clarified by the Fourth Circuit just last year in *Daulatzai v. Maryland*, 97 F.4th 166, 179 (4th Cir. 2024). There, the Fourth Circuit explicitly stated that in the context of post-judgment motions to amend, Rule 60(b)'s strictures must be satisfied *before* Rule 15 arguments are considered—the inquiries do not collapse. *Id.* As Defendants pointed out in opposing Farina's motion to amend, Farina wholly failed to bring this pertinent authority to the Court's attention, despite the fact that his own Rule 59(e)/60(b) motion *only* relied on Rule 60(b) in connection with his amendment arguments. In other words, despite structuring his Rule 59(e)/Rule 60(b) motion to invoke only Rule 60(b) in seeking leave to amend, Farina's subsequent post-judgment motion to amend failed to cite to the controlling authority addressing leave to amend brought under Rule 60(b). This argument only reinforces the frivolity of Farina's post-judgment motions insofar as he has repeatedly failed to supply the Court with the appropriate legal standards, as MNAO has pointed out. (*See, e.g.*, Dkt. 98 at 13–14.)

And again, as argued by Defendants in opposing Farina's motion to amend, even assuming the applicability of Rule 59(e), the Court did not err in not permitting amendment prior to entry of the judgment when he insisted it was unnecessary and the FAC stood on its own. *See Melendez*, 611 Fed. App'x at 764 (Rule 59(e) is not a vehicle "to raise arguments . . . that could have been

15

raised prior to the entry of judgment"). Moreover, his proposed amendment is still futile. Indeed, his Second Amended Complaint shows his claims are still based on allegedly defective valve stem seals at issue in *Guthrie*, as MNAO has shown. (Dkt. 84 at 7 n.4.)[3] And while he may shift his focus to alleged downstream implications of such, they nonetheless "relate" to defective valve stem seals and thus remain squarely within the *Guthrie* settlement and release. (Dkt. 67 at 5 (quoting, verbatim, the *Guthrie* release provision, which applies to all claims "which in any way

---

[3] That footnote directs to the following examples from Farina's proposed Second Amended Complaint that he filed with his Rule 59/60 motion showing his claims relate to allegedly defective valve stem seals at issue in *Guthrie*:

- Dkt. 83-2 ¶ 11 ("Based upon the data generated by its dealers, on November 10, 2020, Mazda acknowledged internally that some of the Class Vehicles consume an excessive amount of engine oil, a symptom of a Valve Stem Seal Defect.");
- *id*. ¶¶ 12–20 (citing to and relying on the same Technical Service Bulletins at issue in the *Guthrie* matter addressed to the same valve stem seal issue);
- *id.* ¶¶ 56–59 (describing MNAO's knowledge of the alleged "Valve Stem Seal Defect"); and
- *id*. ¶ 110 (describing the alleged class issues by reference solely to "the Valve Stem Seal Defect").

Farina subsequently filed a further revised version of the proposed Second Amended Complaint––with his Motion for Leave to Amend, Dkt. 88-1—which removed some of the specific references to the alleged "Valve Stem Seal Defect" included with the SAC appended to Rule 59(e)/60(b) motion as well as to his filings prior to entry of the judgment. (*Compare, e.g.*, Dkts. 83-2 & 70-2 ¶¶ 56–59, *with* Dkt. 88-1 (no comparable paragraphs; *see also* Dkt. 88 at 1 n.1 (claiming only that the attached SAC "has been updated to reflect information in Mazda's just issued Annual Financial Statements").) But he nevertheless re-asserts many of the same allegations and references to the same alleged defect as the root cause of the issue, even in this latest version of the SAC. (Dkt. 88-1 ¶¶ 11 ("some of the Class Vehicles consume an excessive amount of engine oil, a symptom of a Valve Stem Seal Defect"), 12–17 (discussion of TSBs related to the valve-stem seal issue), 25 ("the same valve seal defect as Mazda has acknowledged herein"), 106 ("Not once has any Mazda Service Representative mentioned the known excessive oil usage by Farina's vehicle, nor has the existence of the various TSBs concerning excessive oil usage and the defective valve stem seals ever been mentioned."), 112 (alleged class questions involving issues surrounding the valve-stem seals), & 143 (warranty claim alleging " Defendants' sale of the defective Class Vehicles and their failure and/or refusal to timely diagnose and/or damage to Class Vehicle's emissions systems caused by the admitted Valve Stem Seal Defect within the applicable warranty period constitute a breach of the written and implied warranties applicable to the Class Vehicles.").)

relate to the defective valve stem seals of Class Vehicles," including Farina's).) Indeed, the Court need look no further than Farina's own alleged "common questions," the first four out of five of which ask: "whether the Class Vehicles suffer from the Valve Stem Seal Defect," "whether Defendants knew about the Valve Stem Seal Defect and, if so, how long Defendant have known of the Defect," "whether the defective nature of the Class Vehicles' valve stem seals constitutes a material defect," and "whether Defendant knew or reasonably should have known of the Valve Stem Seal Defect contained in the Class Vehicles before it sold or leased them to Class Members." (Dkt. 88-1 ¶ 112(a)–(c) & (e).) As MNAO showed, the frivolity of post-judgment motions is intensified when the underlying claims have already been found to be barred by res judicata. (*See* Dkt. 98 at 7.) Again, Farina does not even attempt to distinguish the authority MNAO cited on this point or otherwise try to justify his attempt to litigate and relitigate these issues.

Farina also attempts to defend his notice of supplemental authority in which he cited *Trump v. CASA, Inc.*, No. 24A884, 2025 WL 1773631 (U.S. June 27, 2025). (Dkt. 101 at 17.) As MNAO showed, that case does absolutely nothing to support Farina's arguments and instead only supports that the *Guthrie* class action settlement and accompanying class wide release were the proper vehicle for nationwide injunctive relief. (Dkt. 90 at 2.) Farina claims this is mere "quibbl[ing]," yet he fails to explain how or why MNAO is not entirely correct that the Supreme Court's decision does nothing to support Farina and instead only supports MNAO. (Dkt. 101 at 17.) Moreover, Farina ignores that his notice was yet another example of him violating this Court's Local Rules, as it was 10 pages (not the two pages allowed) and comprised pure argument. LCvR 7.1(j).

Farina's attempt to substantiate the legal foundation for his post-judgment filings fails.

**C.** **Farina's charges of "baseless claims" and "misrepresentations" in MNAO's motion are readily debunked.**

Finally, Farina charges MNAO with making "baseless claims" and "misrepresentations," (Dkt. 101 at 15), concerning various procedural issues, which in turn are readily debunked:

- Regarding Dkt. No. 95 at 1, Farina wrote: "Mazda counsel 'falsely claim that Farina has violated the local rules by failing to submit a memorandum in support of this motion.'" In fact, in its opposition to Farina's motion for leave to amend, Mazda cited the local rule requiring a memorandum with every motion with only certain, non-applicable enumerated exceptions. (Dkt. 93 at 2–3.) Farina's motion for leave to amend was filed without a supporting memorandum in violation of this rule. (*See id.*) Farina's reply asserted he satisfied this rule by incorporating by reference docket numbers 83 and 85, his brief in support of his motion to alter or amend the judgment and supporting reply, respectively. (Dkt. 95 at 1 ("[T]hey falsely claim that Farina has violated the local rules by failing to submit a memorandum in support of this motion. Yet the very first paragraph of the motion itself (ECF 88) incorporates Plaintiff's brief in support of his Motion to Amend or Alter the Court's Judgment, Doc. No.83 and his Reply in Support, Doc. No.85.").) Farina cited no rule or case law supporting this was permissible to satisfy the applicable local rule.

- Regarding Dkt. 95 at 1–2, Farina argued: "A second material representation falsely claims that Farina has failed to acknowledge the relief sought herein is necessarily dependent on the Court granting the relief in Farina's Motion to Alter or Amend Judgment." In fact, in its opposition to Farina's post-judgment motion for leave to amend, MNAO argued: "Farina does not dispute—and even acknowledges—that a post-judgment motion to amend may not be granted unless the judgment is vacated under Rule 59(e) or 60(b)." (Dkt. 93 at 3.) MNAO never argued that Farina had outright failed to acknowledge the Rule

18

50(e)/60(b) threshold. To the contrary, MNAO explicitly pointed to Farina's acknowledgment of that requirement. MNAO *did* argue, however, that Farina failed to acknowledge the applicable *Rule 60(b)* standards as applied to motions for leave to amend, as discussed below.

- Regarding Dkt. 95 at 2, Farina wrote: "A third misrepresentation is that Farina has failed to apply for relief under Fed. R. 59(e)." In fact, in opposing Farina's motion to amend, MNAO argued: "But Farina's motion ignores controlling authority holding that, when the movant seeks relief from judgment under Rule 60(b) in order to amend, the strictures of that rule must be independently and preliminarily satisfied before the district court may consider the merits of the Rule 15 arguments." (Dkt. 93 at 3.) Although Farina's motion globally invoked Rule 59(e) and Rule 60, MNAO pointed out that Farina only moved to void the judgment *in order to amend* under Rule 60, *not* under Rule 59(e). (*Id.* at 4.) Yet his motion for leave to amend cited only the Rule 59(e) standards, which are less restrictive, without ever acknowledging the applicable Rule 60 authority. (*Id.* at 4–5.) Put another way, MNAO's argument focused on the mismatch between Farina's Rule 59(e)/Rule 60(b) motion (which invoked only Rule 60 for amendment) and his actual motion for leave to amend (which cited only the Rule 59(e) standards). MNAO never asserted that Farina had not sought Rule 59(e) relief, only that he did not seek Rule 59(e) relief *for leave to amend*.

Farina's arguments of supposed misrepresentations on MNAO's part concerning the serial procedural flaws in his post-judgment motions fall flat.

## III. Farina fails to rebut MNAO's showing that Farina's post-judgment motions are palpably brought for an improper purpose.

A major underpinning of MNAO's motion was its showing that Farina's filings were not only factually and legally frivolous, but that they were brought for an improper purpose. MNAO

identified the factors courts use to determine whether a filing is brought for an improper purpose or indicate malice and bad faith, including repeated frivolous and weak arguments, outlandish claims, use of copy-and-pasted arguments, and "about-face" arguments, and it identified specific examples of Farina's actions that align. (Dkt. 98 at 6–7, 14–22.)

MNAO's motion highlighted many, but certainly not all, of Farina's pattern of vexatious, abusive, and bad-faith litigation conduct throughout the proceedings here, in *Guthrie*, and in *Duffy*. (Dkt. 98 at 17–22.) Farina cries foul at these supposedly "*ad hominem*" attacks. (Dkt. 101 at 16.) They are not. They are factual and well-supported, and the labels—vexatious, abusive, bad faith, conspiracy-driven, harassing, and the like—are all recognized terms of art with legal significance in the context of sanctions. *E.g.*, *Jiangmen Kinwai Furniture Decoration Co. Ltd. v. IHFC Props., LLC*, No. 1:14-cv-689, 2015 WL 5944278, at *8 (M.D.N.C. Oct. 13, 2015) (acknowledging an inference of bad faith "in the face of repeated frivolous or weak arguments"); *Benbow*, 2025 WL 1303957, at *11 (noting "conspiracy-driven conjecture" as evidence of "malice and bad faith"); *Williams v. The Estates LLC*, 663 F. Supp. 3d 466, 487 (M.D.N.C. 2023) (observing that 28 U.S.C. section 1927 is directed at curbing "abuse of court processes"); 28 U.S.C. § 1927 (allowing sanctions against "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously"); Fed. R. Civ. P. 11(b)(1) (listing as improper filings presented "to harass, cause unnecessary delay, or needlessly increase the cost of litigation"). More importantly, they fit, as MNAO's examples and cited case law show. (*Generally* Dkt. 98.) In other words, these are not *ad hominem*; they are apt descriptors befitting Farina and his counsel's conduct warranting sanctions.

Farina next argues that MNAO cannot complain about his pattern of misconduct because it did not move for sanctions contemporaneous with that misconduct. (Dkt. 101 at 16.) Again, Farina misses the point—MNAO is not raising this pattern of abusive litigation misconduct to

support sanctions in the first place. No, Farina's serial and material misstatements throughout his post-judgment filings about his vehicle not having an infotainment system—when it indisputably does—and his improper pursuit of post-judgment relief on indisputably properly dismissed claims, along with his refusal to pull down his offending filings and instead doubling (and tripling) down on them with increasingly hostile attacks on MNAO, its counsel, and the Court, more than support sanctions. *See Benbow*, 2025 WL 1303957, at *12 (awarding sanctions where the offending attorney's "behavior has been a recurring issue throughout the duration of the case").

MNAO's reference to Farina's other vexatious conduct here and across two other fora are offered to show a long-running pattern of multiplying proceedings with meritless and self-contradictory arguments, to dissolve any "inference of incompetence," and to demonstrate the need for significant deterrence against future violations by him and his counsel. *Id.* (noting that factors to consider in imposing sanctions "include whether the conduct was willful or part of a pattern of activity, . . . whether it affected the cost and duration of the litigation process, [and] whether the responsible person has engaged in similar conduct in other litigation"); *Jiangmen Kinwai Furniture Decoration Co. Ltd.*, 2015 WL 5944278, at *8; *also* Fed. R. Civ. P. 11(c)(4) (discussing need for sanctions to be limited to deter repetition); *see also Kirby*, 210 F.R.D. at 191.

Moreover, Farina's conduct in the *Guthrie* court cannot be so artificially separated from his conduct here. Farina would have this Court ignore, for example, the numerous arguments Farina made to the *Guthrie* court insisting that his claims would be released under the *Guthrie* settlement as written, only for Farina to come to this Court and insist the opposite (as this Court noted in dismissing Farina's claims). This about-face is directly relevant to the frivolity and harassing nature of his post-judgment motions, as he has now filed 11 post-judgment filings that are all addressed to trying to undo this Court's determination that Farina's claims were released in

*Guthrie*—as he himself previously insisted in *Guthrie* they would be, contrary to his new position here. (*See* Dkt. 98 at 19 (citing this about-face as an example of improper purpose).) This in and of itself demonstrates the vexatiousness of his conduct.

Similarly, Farina himself has continually attempted to litigate and relitigate arguments he raised in *Guthrie* that the court there rejected, including in his post-judgment motions and filings. (*See, e.g.*, Dkt. 98 at 19–21; Dkt. 96.) For example, MNAO pointed out that Farina's post-judgment motions continue to rely on his theory that MNAO has "publicly acknowledged" liability for his claims, and even go so far as to assert that MNAO's counsel has "flat out lied" to the Court about that while implying the existence of a criminal conspiracy. (Dkt. 98 at 21.) Once again, Farina does nothing to justify his inflammatory assertions nor to rebut MNAO's showing that they were demonstrably in bad faith (*see* Dkt. 98 at 20); instead, he cries foul at MNAO pointing out—and would have this Court ignore—that he has already adjudicated these assertions in *Guthrie*, where they were rejected. It is Farina who keeps resurrecting issues that have already been adjudicated, forcing MNAO to respond and only further demonstrating his pattern of harassing conduct and needlessly increasing the costs of litigation. MNAO was fully justified in relying on Farina's prior misconduct to show improper purpose. His attempt to portray that reliance as sanctionable fails.

**IV.** **MNAO has shown that sanctions are appropriate and warranted to compensate for the harm incurred in being forced to respond to Farina's post-judgment filings, to address his wrongs against the Court, and to preserve the integrity of the judicial process and serve as an effective deterrent.**

MNAO showed significant sanctions are warranted based on Farina's post-judgment filings and his demonstrated pattern of misconduct throughout. Farina now insists MNAO's "demands for significant sanctions are egregious and unfounded." (Dkt. 101 at 18.) Not so.

Primarily, Farina opposes imposition of monetary sanctions against him and his counsel by arguing misplaced case law which appears only to support that the Court need not reflexively

22

award fees. (Dkt. 101 at 18.) While true, here, Farina and his counsel's actions, including numerous filings that repeat his materially false representations concerning *Duffy* and his vehicle not having an infotainment system, along with his refusal to pull those motions down and instead doubling down on them even after being shown he is flat wrong, have caused MNAO to incur significant expense. And this is all with respect to a claim here that is plainly barred by *Guthrie* and should have been voluntarily dismissed once the *Guthrie* settlement was finally approved. (*E.g.*, Dkt. 81 at 4 (The Court: "Plaintiff did not opt out of the Guthrie settlement class and is therefore bound by the release in that action . . . .").) Instead, Farina refused dismissal, forced MNAO to move to dismiss and win dismissal, only now to face baseless and improper post-judgment filings.

Yes, monetary sanctions are not automatic, and the Court can and should consider other sanctions as well. *E.g.*, *Williams*, 663 F. Supp. 3d at 484 (noting appropriate sanctions in addition to attorney's fees can include "reprimands, warnings, orders to undergo continuing legal education, circulation of the Rule 11 Order to members of the offending attorney's firm, suspensions, and disbarment"). But here, the harm to MNAO has been primarily monetary in the form of incurring significant fees in defending against a rash of improper post-judgment filings. The remedy, too, should be monetary, at least with respect to MNAO. Indeed, even Farina acknowledges that monetary sanctions under Rule 11 are appropriate to "shift only the cost of a discrete event." (Dkt. 101 at 18.) Here, that cost is MNAO's attorney's fees incurred in responding to all of Farina's post-judgment filings and being forced to move for sanctions. Fed. R. Civ. P. 11(c)(4) ("The sanction may include . . . an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.").

The Court, however, is also due amends, considering Farina and his counsel's improper and uncalled-for impugning of the Court's integrity, as well as its unnecessary and wasteful

23

expenditure of Court resources—all of which Farina simply ignores in his opposition. *Benbow*, 2025 WL 1303957, at \*11 n.14 ("While disagreeing with a ruling and taking an appeal are commonplace in litigation, questioning the court's integrity is not, and counsel is cautioned against making such unsupported remarks. *See* N.C. Rev. R. Prof'l Conduct 0.1[5] ('A lawyer should demonstrate respect for the legal system and for those who serve it[.]')."). And given Farina's conduct, coupled with his clear lack of remorse or valid explanation and justification for his serial misconduct and his defiant insistence to stand on his offending filings (Dkt. 94 at 3 ("Plaintiff stands by all factual allegations and reasonable inferences therefrom in his extant motion papers")), appropriate non-monetary sanctions should be significant and sufficient to deter future misconduct, both by him and his counsel, as well as others. Fed. R. Civ. P. 11(c)(4). As Farina and his counsel have demonstrated, nothing short of that will suffice to curb further abuses.

Farina next refers to and quotes from correspondence between counsel following the "meet and confer" initiated after serving its motion for sanctions. (Dkt. 101 at 18–19.) Farina seems to allude to his arguments therein as some sort of "get out of sanctions" card, on the basis that if he withdrew his offending post-judgment motions, then arguably he would waive any appellate relief, as the 30 days to appeal would have already expired with no disposition on his Rule 59/60 motion. Fed. R. App. P. 4(a)(4). That doing the right thing by withdrawing his offending filings might otherwise preclude any appeal he might pursue is neither an excuse nor a justification for standing on filings that contain serial misstatements of fact, as Farina's do. There is no safe harbor under Rule 11 or otherwise for improper filings that violate the rule and which should be withdrawn . . . *unless* the offending party may find himself outside his window to notice an appeal. That Farina's post-judgment motions were laced with Rule 11-violative content and that withdrawal of those motions to cure the violation may jeopardize his appellate rights are problems of his own making.

24

But that in no way justifies Farina standing firm on his violative filings.

Finally, Farina chides MNAO for responding with "a curt rebuff, ignoring any prospect of negotiations and focusing solely on their rule-violation campaign." (Dkt. 101 at 20.) MNAO's response was indeed curt, as there was nothing left to say. Farina has stood by his violative filings, and he stands there still. And it is unclear what negotiations MNAO should engage in—Farina's claims are barred by *Guthrie*, as this Court correctly held. There is nothing to negotiate. MNAO attempted to avoid this sanctions motion by showing Farina his errors and offering him the opportunity to withdraw. He refused. We are here because of Farina and his counsel, not MNAO.

## Conclusion

The verbatim arguments Farina raised in his opposition to MNAO's motion for sanctions did nothing to show that significant sanctions were not warranted. They do nothing now to show that MNAO's motion lacked a factual or legal basis or was otherwise sanctionable. He and his counsel have evinced a reckless disregard for facts and law, local rules, and the integrity of the Court. His post-judgment filings have only further compounded his campaign of vexatious litigation across multiple fronts, including not only here but in *Guthrie* and *Duffy*. And his motion does nothing but evince that, short of sanctions, Farina and his counsel will continue this misconduct. The Court should deny Farina's motion for sanctions.

/s/ Jennifer Winkler_____
Jennifer W. Winkler, N.C. Bar No. 56913
NELSON MULLINS RILEY & SCARBOROUGH LLP
301 S. College Street, 23rd Floor
Charlotte, North Carolina 28202
T: (704) 417-3000
F: (704) 377-4814
Email: Jennifer.Winkler@nelsonmullins.com

/s/ Robert L. Wise_____
Robert L. Wise, Admitted *Pro Hac Vice*

25

Danielle Gibbons, Admitted *Pro Hac Vice*
NELSON MULLINS RILEY & SCARBOROUGH LLP
1021 E. Cary Street, Suite 2120
Richmond, Virginia 23219
T: 804.533.2900
F: 804.616.4129
Email: Robert.Wise@nelsonmullins.com
Email: Danielle.Gibbons@nelsonmullins.com

*Counsel for Mazda Motor of America, Inc. d/b/a
Mazda North American Operations*

## <u>CERTIFICATE REGARDING USE OF ARTIFICAL INTELLIGENCE</u>

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal research resources, such as Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

<div style="margin-left: 40%">

*/s/ Robert L. Wise*
Robert L. Wise, Admitted *Pro Hac Vice*
NELSON MULLINS RILEY & SCARBOROUGH LLP
1021 E. Cary Street, Suite 2120
Richmond, Virginia 23219
T: 804.533.2900
F: 804.616.4129
Email: Robert.Wise@nelsonmullins.com

*Counsel for Mazda Motor of America, Inc. d/b/a*
*Mazda North American Operations*

</div>

27

## CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2025, I caused a true and correct copy of the foregoing to be filed and served with the Clerk of Court using the CM/ECF system which will send notification of filing to the following:

Joseph A. O'Keefe, *Admitted Pro-Hac Vice
J. O'Keefe Law, PLLC
6251 Armdale Heights
Colorado Springs, CO 80927
Telephone: (719) 208-4099
Email: Joseph@JOkeefelaw.com

Raymond M. DiGuiseppe, NC State Bar No. 41807
The DiGuiseppe Law Firm, P.C.
116 N. Howe Street, Suite A
Southport, NC 28461 Phone: (910) 713-8803
Email: law.rmd@gmail.com

*Attorneys for Plaintiff*

Jeremy A. Kosin, NC Bar #36116
Kenneth B. Rotenstreich, NC Bar # 14293
Teague Rotenstreich Stanaland Fox & Holt, P.L.L.C.
Post Office Box 1898 Greensboro, NC 27402-1898
Telephone: (336) 272-4810
Facsimile: (336) 272-2448
E-mail: jak@trslaw.com
E-mail: kbr@trslaw.com

*Attorneys for Defendant Keffer Mazda*

By:*/s/ Robert L. Wise*
Robert L. Wise, Admitted *Pro Hac Vice*
NELSON MULLINS RILEY & SCARBOROUGH LLP
1021 E. Cary Street, Suite 2120
Richmond, Virginia 23219
T: 804.533.2900
F: 804.616.4129
Email: Robert.Wise@nelsonmullins.com

*Counsel for Mazda Motor of America, Inc. d/b/a*
*Mazda North American Operations*

28